
Lena MARTIN et al., Appellant,

v.

WASHINGTON HOSPITAL
CENTER, Appellee.

No. 79-912.

District of Columbia Court of Appeals.

Argued May 21, 1980.

Decided July 22, 1980.

Sherman L. Cohn, Washington, D. C.,
with whom Ronald A. Karp, Washington, D.
C., was on brief for appellant.

John F. Mahoney, Jr., Washington, D. C.,
for appellee.

Before KERN, MACK and PRYOR, Associate Judges.

KERN, Associate Judge:

This is an appeal from the trial court's
entry of a judgment for appellee Washington Hospital Center notwithstanding the
jury's verdict in favor of appellant. Appellant is the mother of Willis Earl Martin and
the personal representative of his estate.
She sued the Hospital for the wrongful
death of her son in an auto accident occurring some twelve hours after the Hospital
released him from emergency treatment.

The record contains testimony by the decedent's brother that he took the decedent
to the Hospital because of his complaints
that "he was not feeling good." (Record at
65.) The decedent remained in the emergency ward until discharged to the custody
of his brother who testified that the decedent "still wasn't right" when signing him
out of the Hospital at around four o'clock in
the morning upon the direction of the physician in the Emergency Treatment room.
(Record at 72.) There was testimony by a
fellow employee of decedent that he appeared at his place of business in the "late
morning or early afternoon" of the same
day he had been released from the Hospital
(Record at 93), despite the fact that he was
not scheduled to work that day. (Record at
94.) She (the fellow employee) observed
decedent for an hour and concluded that he
was "really basically disoriented." (Record
at 94.) Others also observed decedent there
and in light of his condition sought to obtain someone who could drive him home.
(Record at 99.) In mid-afternoon of that
day the decedent drove his automobile into
a parked car and died almost instantly.

A police officer who responded to the
scene of the auto accident in which decedent lost his life testified that "brush
marks" on the street indicated that dece-

dent was driving the car at "excessive speed" (Record at 129), and that the car had been "out of control" (Record at 121) when the accident occurred.

The District's Deputy Chief Medical Examiner, who performed the autopsy, testified that decedent had died "as a result of the automobile accident." (Record at 180.) Tests he had performed showed neither alcohol nor drugs in the deceased's system at the time of his death (Record at 181), and the body had borne no indicia of chronic alcohol or drug use. (Record at 180.)

The record of Willis Earl Martin prepared by the appellee Hospital reflected that he was admitted at about 8 p. m. complaining of "stomach cramps and delirium." (Record at 140.) No physician examined the deceased, however, until some five hours later. (Record at 142.) It was recorded that he was disoriented, believing that he was at another hospital, thinking the year was 1952 and that George Washington was President. (Record at 142, 145 and 165.) The physician who finally examined decedent diagnosed him, without ordering toxicology laboratory work,[1] as having "anxiety reaction with drug abuse," (Record at 141, 143), but concluded that a psychiatric consultation was not necessary. (Record at 145.) After further observation by the attending doctor (Record at 148–49), the decedent was discharged to his brother at 4 a. m., with instructions to "seek medical help" and take no alcohol or drugs for at least one week. (Record at 149.)

The attending physician agreed in his testimony (Record at 151), that "anxiety reaction can come about as a result of mental depression or trauma." He testified that the Hospital's record reflected the decedent to have been so uncooperative as to require being placed under restraint (Record at 159), and to have stated that he had been drinking heavily and "smoking," which the doctor took to mean using marijuana, probably. (Record at 157.) When the doctor ordered the decedent released, this record reflected that he was well-oriented. (Record at 161.)

Appellant presented medical testimony from a physician who had examined the Hospital record of the decedent and was qualified as an expert on emergency room procedures. He was of opinion that decedent was in an altered state of consciousness or disorientation on the day in question. (Record at 196.) Such a condition could be caused by drugs, psychiatric problems or trauma. (Record at 201.) He testified that laboratory work and a psychiatric consultation would be very significant in determining the cause of such a condition. (Record at 202.) In the witness' opinion, appellee Hospital did not provide the care and treatment to Willis Earl Martin that comports with the customary care and treatment afforded in emergency rooms by hospitals in the District. (Record at 205–06.) Had the decedent been hospitalized rather than released, he "would be in a controlled environment, such that there would be much less chance of him endangering himself or others." (Record at 225.) He gave further testimony that one who "is experiencing an anxiety reaction can lapse in and out of periods of lucidity." (Record at 242.)

Appellee Hospital presented no evidence at trial. The trial court in its charge to the jury summarized appellant's case:

Now, the claim in this case, ladies and gentlemen, as you know, is that the Hospital Center, through the conduct of Dr. Hines, was negligent in the diagnosis, examination and treatment of Willis E. Martin, and in prematurely discharging him from the hospital in connection with his being brought to the hospital. . . . [A]nd that this negligence approximately caused the operation, the harm which eventually befell Willis E. Martin when he drove his car in the manner he did, resulting in fatal injuries around 3:00 or 4:00 o'clock that Sunday afternoon. [Record at 354.]

The court then articulated appellant's burden of proof:

1. Although the attending physician deemed an electrocardiogram and administration of fluids

to decedent's veins to be called for, no such actions were taken. (Record at 147–48.)

Now, in order then for the plaintiff to recover here ... she must prove by a preponderance of the evidence all of the following evidence. First, the standard of care exercised by reasonably competent physicians in the District of Columbia, or metropolitan area, at the time in question of February, 1977, under the same or similar circumstances.

Second, she must establish that the defendant, Dr. Hines—Dr. Hines, although not the defendant, but the physician, departed from that standard of care.

And three, that the departure from that standard of care caused the injuries complained of.

If the plaintiff fails to prove any one of those three elements, your verdict must be in favor of the defendant, Hospital Center.

\* \* \* \* \* \*

Now, proximate cause exists under these circumstances, if you find that Dr. Hines' conduct was negligent, as the examining physician, taking into account all my other instructions, and that such conduct was a substantial factor in bringing about the ultimate harm Mr. Martin suffered.

\* \* \* \* \* \*

Now, in deciding whether Dr. Hines' conduct in his examination, diagnosis, treatment and discharge of Mr. Martin was a substantial factor in placing Mr. Martin in a position to operate his vehicle in a manner likely to result in a fatal accident due to a disturbed mental condition which the doctor should have foreseen, and guarded against, you should consider such things as Mr. Martin's chances of avoiding such harm to himself if he had been properly treated according to medical practices recognized as appropriate under all circumstances. [Record at 355–56, 358, 359–60.]

Finally, the court instructed the jury concerning the possibility of contributory negligence on the part of decedent:

Therefore, if you find that Dr. Hines was guilty of negligence, as I have defined that term of you, you should find for the Hospital Center ... [i]f you find that the person, Willis Martin, himself, was guilty of contributory negligence, as I defined that term for you, because a person may not recover from another for the injuries sustained where that person has been what is called contributorily negligent. [Record at 369.]

The jury returned a verdict in favor of appellant. The trial court in granting appellee's motion for judgment n. o. v. stated:

Dr. McCullars [appellant's expert witness] is not qualified to supply the critical expert psychiatric testimony which this case required, i. e., psychiatric testimony establishing that the symptomatology exhibited by decedent at the defendant hospital on the evening of February 19, 1977, notwithstanding the report of orientation at time of discharge, was consistent with a mental disorder of a type likely to persist at least into the next afternoon and impair the patient's ability to safely drive an automobile.

This failure of proof by plaintiff on the issue of proximate cause permitted the jury to improperly speculate as to the relationship between the decedent's mental condition while at the hospital and his automobile accident approximately one-half day later.

\* \* \* \* \* \*

This failure of proof on the critical issue of proximate cause requires the Court to set aside the verdict and judgment for plaintiff and enter judgment for defendant notwithstanding the verdict. [Record at 33, 34, 35.]

Many medical malpractice cases, of course, require expert testimony, particularly where the issue centers on the standard of care or breach of duty. This court has declared that

if a case involves the merits and performance of scientific treatment, complex medical procedures, or the exercise of professional skill and judgment, a jury will not be qualified to determine whether there was unskillful or negligent treatment without the aid of expert testimo-

ny. [*Harris v. Cafritz Memorial Hospital*, D.C.App., 364 A.2d 135, 137 (1976).]

On the other hand, it is clear that many such cases do not require expert testimony. The federal court of appeals for this circuit has noted that

[there is no] peculiar need for expert testimony on any issue the resolution of which would not extend the jury beyond the range of ordinary lay knowledge and experience. . . . [There] must be, in the nature of things, many instances where the facts alone prove the negligence, and where it is unnecessary to have the opinions of persons skillful in the particular science to show unskillful and negligent treatment. [*Washington Hospital Center v. Butler*, 127 U.S.App.D.C. 379, 384, 384 F.2d 331, 336 (1967).]

■ Therefore we must consider the present case in light of the principle that expert testimony is not required when the jury has enough information on which to draw factual inferences. Here, we note the completeness of the account which the evidence gave of the decedent's whereabouts and behavior between his release from the hospital and his fatal accident. At no point during that twelve-hour period is there evidence of a change in decedent's condition from that noted by his brother on returning to the hospital to receive decedent. Instead, the evidence indicated that (1) decedent could not sign his name at that point, and his brother was alarmed about decedent's appearance; (2) decedent remained in the same state enroute to his home; (3) decedent went to his place of business on Sunday although not scheduled to do so; (4) the security guard at that place of business was concerned by decedent's appearance; (5) a coworker was similarly concerned by decedent's appearance; and (6) decedent was driving with excessive speed and his car was out of control at the time of his accident.

■ In light of this evidence supporting the inference that the symptoms decedent demonstrated in the hospital did indeed persist over the next several hours, we conclude that appellant was not under a burden, as declared by the trial court, to produce expert testimony that such symptoms were consistent with a mental disorder likely to persist from the time of discharge to the time of the fatal accident later that day. As the federal court of appeals of this circuit announced in *Doctors Hospital v. Badgley*, 81 U.S.App.D.C. 171, 172, 156 F.2d 569, 570 (1946): "Probable cause may be inferred from apparent effects, despite the possibility of error that inheres in all human observation and all human inferences."

Therefore, noting the evidence presented to the jury which supported the inference of causation by the hospital, through improper release, of Martin's death, and noting also the standard of review by a court of the evidence for granting a judgment *n. o. v.*,[2] we conclude that the judgment entered on the jury's verdict should be reinstated.

*Reversed and remanded with directions to enter the verdict as returned.*

---

**2.** In reviewing a trial court order granting a judgment *n. o. v.*, this court must view the evidence and all reasonable inferences in the light most favorable to the party who obtained the jury verdict; we may affirm only if no juror could reasonably reach a verdict for the opponent of the motion. [*Marcel Hair Goods Corp. v. National Savings & Trust Co.*, D.C. App., 410 A.2d 1, 5 (1979).]

*See also Brady v. Southern R. R.*, 320 U.S. 476, 479 80, 64 S.Ct. 232, 234, 88 L.Ed. 239 (1943); *Klein v. District of Columbia*, 133 U.S. App.D.C. 129, 132, 409 F.2d 164, 167 (1969); 9 Wright & Miller, Federal Practice and Procedure, § 2524 (1971); 5A Moore's Federal Practice ʼ 50.02[1] (1980).