Delores WASHINGTON, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 13095.

District of Columbia Court of Appeals.

Argued En Banc March 17, 1980.

Decided April 6, 1981.

Michael T. O'Bryant, Washington, D. C., for appellant.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., with whom Louis P. Robbins, Acting Corp. Counsel, Washington, D. C., at the time of en banc argument, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., at the time of en banc argument, were on brief, for appellee.

Before NEWMAN, Chief Judge, KELLY, KERN, NEBEKER, HARRIS, MACK, FERREN, and PRYOR, Associate Judges, and GALLAGHER, Associate Judge, Retired.[*]

FERREN, Associate Judge:

This case presents two questions: (1) whether a letter from counsel advising the District of Columbia that appellant had suffered injuries from a fall in a public housing unit satisfied the requirements of D.C. Code 1973, § 12–309, that a claimant, within six months of the injury, must give written notice of the "cause, and circumstances" (as well as the place and approximate time)[1]; and, if so, (2) whether the trial court erred in granting the District's motion for judg-

ment notwithstanding the verdict on the ground there was insufficient evidence that the alleged negligence was the proximate cause of appellant's injury. As to the first, we hold that the "cause" element will be satisfied if the notice recites facts from which the District reasonably could anticipate a claim against it might arise, and that the "circumstances" element will be met if the notice provides enough information to enable the District to conduct a prompt, properly-focused investigation. Applying these criteria, we conclude that the letter from appellant's counsel satisfied § 12–309. As to the second issue, we conclude that the trial court `erred in granting judgment n. o. v. Accordingly, we reverse and order the trial court to reinstate the jury verdict in appellant's favor.

## I.

At about 2 a. m. on March 23, 1975, appellant Delores Washington suffered ankle injuries when she fell while attempting to leave the residence of a friend, Marion Fisher.[2] The accident occurred when appellant—who had walked up a stairway leading to the front door of Fisher's house—stepped back as the door opened, and twisted her ankle.

Two weeks later, on April 4, 1975, appellant's attorney sent the following letter to the National Capital Housing Authority (NCHA), with a carbon copy to the Mayor:

Re: Our Client: Delores Washington

Date of Accident: 3/22/75

damages to person or property unless, within six months after the injury or damage is sustained, the claimant, his agent, or attorney has given notice in writing to the [Mayor] of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage. A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section.

---

[*] Judge Gallagher was an Associate Judge of the court at the time of argument. His status changed to Associate Judge, Retired, on February 27, 1981.

A divided division of this court affirmed the judgment of the trial court. That decision originally was published in the advance sheets at 407 A.2d 702 (1979). Subsequently, the en banc court vacated the opinion and judgment and granted appellant's petition for rehearing en banc. Accordingly, the division opinion was withdrawn from the bound volume and thus no longer appears at the above-cited location.

1. D.C.Code 1973, § 12–309, provides:

An action may not be maintained against the District of Columbia for unliquidated

2. At the time of the accident, Fisher's residence (1923 Stanton Terrace, S.E.) was a public housing unit.

Location: 1923 Stanton Terrace SE

Dear Sirs:

Reference is made to the above-captioned matter. This office represents Ms. Delores Washington in connection with the fall sustained in the building owned by you at the above-stated address.

Ms. Washington sustained a broken leg and was treated at Cafritz and George Washington Hospitals. As soon as we have documentation of all losses sustained by her, we will forward same to you. If you have any questions concerning this matter, please contact me at your earliest convenience.

The Mayor's office has established procedures for identifying "claims letters" and channeling them to the proper department. *See DeKine v. District of Columbia*, D.C. App., 422 A.2d 981 (1980). Presumably as a result of such forwarding, District investigator Robert L. Schumacher received the letter from appellant's attorney. Schumacher discussed the accident with appellant's counsel on February 23, 1976, and on several other occasions. On June 15 or 16, 1976, Schumacher visited 1923 Stanton Terrace and examined the scene of the accident.

In the meantime, on June 4, 1976, appellant filed a complaint for damages against NCHA and the District. She alleged that they negligently had failed to maintain the premises in a safe condition by neglecting to install a proper handrail and to maintain proper lighting. The District answered by denying all allegations of negligence and asserting that appellant had failed to comply with the requirements of § 12–309.[3]

A jury awarded damages to appellant totaling $24,380. The District moved for judgment notwithstanding the verdict, contending primarily that (1) the notice letter "was completely void with respect to the circumstances of the accident" and thus did not satisfy § 12–309, and (2) the evidence failed to establish that the lack of a handrail was a proximate cause of the accident. The trial court concluded "that the mandatory notice provisions of Section 12–309 were adequately complied with."[4] The court, however, agreed with the District on the merits, granting judgment *n. o. v.* based on its finding of insufficient "evidence to show that the lack of a banister was the proximate cause of the accident."[5] On December 23, 1977, the court denied appellant's motion for reconsideration. Although the trial court ruled that the evidence was sufficient for a finding that the District was negligent in failing to maintain a rail, the court also ruled, once again, that

---

**3.** The government filed a motion to dismiss the complaint as to NCHA on the ground that it was not a suable entity. Appellant did not oppose the motion. The court dismissed NCHA as a party by order dated August 6, 1976.

The District filed a third party complaint for indemnification or contribution against Marion Fisher, contending that if appellant was injured as alleged, such injury "was caused by the sole or concurrent negligence of ... Fisher, tenant of the premises upon whom the responsibility lies for the care, maintenance, and control of the premises." On September 27, 1977, the pretrial judge entered a default judgment against Fisher, who did not answer the third party complaint.

**4.** The court rejected the District's claim that it had never received notice about the broken banister, finding "sufficient evidence from which the jury could find notice to the District of Columbia that the banister had broken off prior to the date of the accident."

**5.** The trial court reasoned:

In the first place, the initial cause of the accident was the stumbling of the defendant on the staircase, concerning which there was no proof that it was caused by any deficiency in the premises. The plaintiff argues that because she grabbed for a handrail and there was no rail there, such lack of a handrail was the cause of her injury. However, the evidence completely fails to show that she made a grab for the area where the handrail should have been. On the contrary, at one point in her testimony, she said she made a grab on the side opposite from that on which the rail was supposed to be located. It is not enough to show there was no handrail where one was supposed to have been. It must also be shown that the lack of a handrail was the cause of her injury. This the evidence completely fails to establish.

the evidence was insufficient to show such negligence was the proximate cause of appellant's injuries.

On appeal, a divided panel of this court concluded that appellant had failed to satisfy the requirements of § 12–309 and, on that basis, affirmed the entry of judgment in favor of the District.[6]

## II.

Appellant contends, first, that her April 4, 1975 letter satisfied the notice requirements of § 12–309. The District concedes that this letter provided the approximate time of the injury,[7] the place of injury (1923 Stanton Terrace, S.E.—a single family house owned by the District and managed by NCHA),[8] and the fact that appellant's injuries resulted from a fall. The District asserts, however, that the letter contained insufficient details of the "cause, and circumstances" of the injury.

A. Section 12–309 "was intended by Congress to ensure that 'District officials [would be given] reasonable notice of [an] accident so that the facts may be ascertained and, if possible, the claim adjusted.'" *Shehyn v. District of Columbia*, D.C. App., 392 A.2d 1008, 1013 (1978) (quoting H.R.Rep.No.2010, 72d Cong., 2d Sess. 2 (1933)). *Accord, Braxton v. National Capi-*

tal Housing Authority, D.C.App., 396 A.2d 215, 217 (1978) (per curiam); *Pitts v. District of Columbia*, D.C.App., 391 A.2d 803, 809 (1978); *Miller v. Spencer*, D.C.App., 330 A.2d 250, 251 (1974); *Hurd v. District of Columbia*, D.C.Mun.App., 106 A.2d 702, 704 (1954); *Stone v. District of Columbia*, 99 U.S.App.D.C. 32, 33, 237 F.2d 28, 29 (en banc), *cert. denied*, 352 U.S. 934, 77 S.Ct. 221, 1 L.Ed.2d 160 (1956). Although the statute "is to be strictly construed" and "compliance with [its] notice requirement is mandatory," *Pitts, supra* at 807 (citations omitted), "'with respect to *the details* of the statement [giving notice], *precise exactness is not absolutely essential*.'" *Id.* (quoting *Hurd, supra* at 705, and adding emphasis). *Accord, Breen v. District of Columbia*, D.C.App., 400 A.2d 1058, 1062 (1979).[9] The degree of specificity required under the statute, moreover, is the same whether the claimant provides written notice to the District or relies instead on an official police report. *See, e. g., Eskridge v. Jackson*, D.C.App., 401 A.2d 986, 989 (1979) (per curiam); *Miller, supra* at 252 n. 7.

We have recognized that "cause" and "circumstances" are separate elements of the § 12–309 requirement. *See Pitts, supra* at 809. *Accord, Stone, supra*, 99 U.S. App.D.C. at 45–46, 237 F.2d 41–42 (Prettyman, J., dissenting); *Boone v. District of*

---

6. In view of its determination on the notice issue, the majority found it unnecessary to review the trial court's rationale supporting the grant of judgment *n. o. v.*

7. We have noted that the statute's "approximate time" requirement means a claimant must give the District "an approximate estimate of the time of the accident," not the precise hour of the day on which an injury is sustained in order to satisfy § 12–309. *Pitts v. District of Columbia*, D.C.App., 391 A.2d 803, 809 n. 5 (1978) (quoting legislative committee report).

8. The letter stated that the "fall was sustained in the building." We conclude—as the District concedes—that reference to a fall in a single-family house at a designated address meets the "place ... of injury" requirement.

9. This rule of construction was recognized by Judge Prettyman, dissenting in *Stone, supra*:

[I]n so far as concerns the requirement that the notice be given, and within the time specified, and to the proper officers, the statute is strictly construed. [Citing cases.] But on the question of whether or not a notice in fact given is sufficiently definite as to the time, place, nature, etc., of the injury, the rule of liberal construction is generally adopted by the courts. [*Id.* 99 U.S.App.D.C. at 45, 237 F.2d at 41 (quoting *City of East Chicago v. Gilbert*, 59 Ind.App. 613, 621, 108 N.E. 29, 32, *modified*, 59 Ind.App. 613, 109 N.E. 404 (1915)).]

*Accord, Volk v. Michigan City*, 109 Ind.App. 70, 73–74, 32 N.E.2d 724, 725 (1941); *City of Louisville v. Verst*, 308 Ky. 46, 48, 213 S.W.2d 517, 518 (1948); *Bowles v. City of Richmond*, 147 Va. 720, 133 S.E. 593 (1926).

*Columbia*, 294 F.Supp. 1156, 1157 (D.D.C. 1968).[10] More specifically, in *Pitts, supra,* which concerned a claim for wrongful death at a public housing project, we said with respect to the "cause" element that notice would be sufficient "if it recites facts from which it could be reasonably anticipated that a claim against the District might arise." *Id.* at 809.[11] This means that the written notice or police report must disclose both the factual cause of the injury and a reasonable basis for anticipating legal action as a consequence. Such notice would suffice, therefore, if it either characterized the injury and asserted the right to recovery, or—without asserting a claim—described the injuring event with sufficient detail to reveal, in itself, a basis for the District's potential liability.[12]

As to the "circumstances" element under § 12–309, we stated in *Pitts, supra,* that the adequacy of the circumstances described must be determined "with reference to the purpose of the statutory notice requirement which is '... to give the District timely information concerning a claim against it, so it may adequately prepare its defense.'" *Id.* at 809 (quoting *Stone, supra,* 99 U.S. App.D.C. at 33, 237 F.2d at 29).[13] Thus, the circumstances must be detailed enough for the District to conduct a prompt, properly focused investigation of the claim.[14]

 B. We turn to the facts of this case.[15] As to the "cause" requirement, the April 4 letter revealed to the District that appellant had suffered a "fall"; that this had occurred "in the building owned by [the District] at the above-stated address," a single-family dwelling; and that she had "sustained a broken leg and was treated at Cafritz and George Washington Hospitals."

10. On occasion, we have not perceived a need to consider "cause" and "circumstances" separately, concluding with reference to "cause, and circumstances" taken together that the notice was inadequate because it failed to describe the nature of the claim asserted. *See Breen, supra* at 1062–63; *Braxton, supra* at 217–18; *Miller, supra* at 252–53; *Brown v. District of Columbia,* D.C.App., 304 A.2d 292, 293 (1973) (per curiam).

11. We concluded that a police report stating, with reference to public housing property, that the child "slipped and fell through a guard rail ... after attempting to climb ... a flight of stairs (4 stairs)," satisfied the "cause" element. *Pitts, supra* at 809.

12. The written notice or police report relied on, however, will not suffice if, under a reasonable construction, it suggests a basis for the claim that differs from the one eventually alleged. *See Breen, supra* (notice alerted District to claim of racial discrimination but subsequent complaint alleged libel).

13. In *Pitts, supra,* the "circumstances" test was satisfied by the following information in the police report:

the identity of the persons present when the child fell, ... the name of the mother and father of the child, ... the fact that the child fell as she and her mother and sister were descending the stairs, ... the name of the security guard on duty in the building at the time of the accident, ... the number of the emergency vehicle which transported the injured child to the hospital and its crew's provisional diagnosis of her injuries, and ... the name of the treating physician at the hospital and his diagnosis and prognosis. [*Id.* at 809.]

14. *Cf. Magee v. City of Jacksonville,* 87 So.2d 589, 591 (Fla.1956) (claimants should not be deprived of day in court by "unreasonably technical and burdensome application of" statute as long as notice is timely served on proper official and is drafted "with sufficient detail to accord ... municipality a fair and reasonable opportunity to make a sufficient investigation"); *Swanson v. City of Marquette,* 357 Mich. 424, 431, 98 N.W.2d 574, 578 (1959) ("notice was specific as to place, time, and nature and result of accident"; accordingly, "defendant city was given ample notice and opportunity to investigate"); *Johnston v. Kansas City,* 211 Mo.App. 262, 267–68, 243 S.W. 265, 267 (1922) (if city officials "could readily go to the place [of the accident] and locate the negligent defect which caused the injury, then [notice] is sufficient"); *see also City of Waco v. Landingham,* 158 S.W.2d 79, 80 (Tex.Civ.App.1940) (description of cause or circumstances of injury must be sufficient to direct attention with reasonable certainty to defect or negligence claimed).

15. Adequacy of § 12–309 notice is a question of law for the court. *See Sapiente v. Waltuch,* 127 Conn. 224, 226–27, 15 A.2d 417, 418 (1940); *Keller v. Tomaska,* 299 Ill.App. 34, 40, 19 N.E.2d 442, 445 (1939).

The letter also included a reference to the fact that appellant had retained counsel to write to the District to pursue "losses sustained by her" as a result. Taken together, this information alerted the Mayor and his subordinates to a potential lawsuit based on the District's legal responsibility for the premises as owner-manager. Thus, an asserted causal link between the District and appellant's injury was clear from the letter.[16] Especially given the reference to "our client" in the lawyer's April 4 letter,[17] there was no alternative hypothesis for a legal cause of the injury (e. g., a slip on a child's mislaid toy) that was sufficiently strong for the District reasonably to have ignored it as ambiguous or far-fetched.[18]

As to the adequacy of the "circumstances" described, this is a close case. *Compare Pitts, supra* (quoted at note 13, *supra* ). The letter specified the location of the accident by street address, the name of the victim, and the date of the accident. It referred to a "fall," described the injury as a "broken leg," and gave the names of the hospitals that had treated appellant. We conclude that this description of the "circumstances" of the injury provided enough information to enable the District to conduct a prompt, properly focused investigation by contacting the victim (through her attorney) and requesting the names of witnesses, by visiting the scene of the accident, and by examining hospital records. *Cf. Dinsmore v. City of New York*, 221 A.D. 755, 222 N.Y.S. 550 (1927) (notice that claimant fell through ice in park was sufficient because it did not mislead officials and enabled them to investigate promptly the circumstances surrounding the accident).

■ C. It is important to stress that in arriving at this result we rely solely on the contents of the April 4 letter. The fact that the District investigated the incident as a result of the letter is irrelevant to the question whether the letter itself was "notice in writing" within the meaning of § 12–309.[19]

It may be true that the greater the detail provided in a letter, the more easily the

---

**16.** *Compare Jenkins v. District of Columbia*, D.C.App., 379 A.2d 1177 (1977) (mere record of acquittal at criminal trial does not reasonably imply existence of claims for false arrest and malicious prosecution).

**17.** The information about appellant's asserting a claim has a bearing on satisfying the "cause" requirement in this particular case. Let us suppose that appellant instead relied for § 12–309 purposes on a police report, not on written notice. Although we have recognized that § 12–309 does not apply "a stricter standard to a police report than [that] required for a written notice from claimant," *Miller, supra* at 252 n. 7 (citing *Stone, supra* ), we have stressed that a police report, to satisfy the notice requirement, "must contain information as to time, place, cause and circumstances of injury or damage with at least the same degree of specificity required of a written notice." *Miller, supra* at 252. The present case illustrates that a police report containing all (but only) the information in the notice letter here except the reference to a claim might not provide the "same degree of specificity" as the letter; notice of a fall in a public housing unit, resulting in a broken leg, does not in itself imply "that a claim against the District might arise." *Pitts, supra* at 809.

**18.** *Compare Braxton, supra* (in suit against the District for negligent security facilitating thieves' entry into appellant's public housing apartment, police report specifying that burglars gained entry to apartment by prying open rear door lock did not imply negligence by housing authority employees).

**19.** Accordingly, in determining that the April 4 letter satisfied the requirements of § 12–309, we do not rely on the fact that the District apparently was not hampered in its investigation of appellant's claim by lack of more specific notice. *See* Part I. We therefore reject the approach courts have taken in declining to hold a claimant to a higher degree of specificity or accuracy because the District had failed to show prejudice. *See, e. g., Hurd, supra* at 704 (incorrect notice of place where sidewalk accident occurred was cured by written notice to Inspector of Claims, not to the Commissioners as the statute mandates, since "the District was not actually prejudiced or hampered in its investigation by the mistake in the original notice"); *Stone, supra*, 99 U.S.App.D.C. at 34, 237 F.2d at 30 ("there was no prejudice to the District from plaintiff's error" in notifying the District that the accident occurred at the incorrect corner of the intersection); *see also Toomey v. District of Columbia*, D.C.App., 315 A.2d 565, 566 n. 1 (1974) (per curiam). Nonetheless, the District's ability to investigate the claims in those cases (where the notice concededly provided inaccurate details) and in the

District can identify its nature and decide how best to deploy its limited investigative resources. But the purpose of § 12–309 is not to help the District to evaluate known claims by requiring notice complete enough to state a formal cause of action. The statute, rather, "was designed 'to protect the District of Columbia against unreasonable claims,' and 'to give the District officials reasonable notice of the accident so that the facts may be ascertained and, if possible, the claim adjusted.'" *Hurd, supra* at 704 (footnote omitted) (quoting legislative history). *Accord, Pitts, supra* at 807; *Stone, supra* at 33, 237 F.2d at 29. Put another way, § 12–309 was intended solely to assure the District the opportunity for timely access to all relevant facts about a potential claim, in order to protect the District against an unfair advantage by the eventual claimant.

Were we to order dismissal of appellant's claim on § 12–309 grounds, we would be affording the District greater protection than the statute was intended to provide. We conclude that the "cause, and circumstances" requirements were met here.

### III.

■ Appellant also contends that the trial court erred in granting judgment *n. o. v.* on the ground there was insufficient evidence that the District's negligence was the proximate cause of her injury.

Our standard of review is well-established:

In reviewing a trial court order granting a judgment *n. o. v.*, this court must

present case demonstrates that liberal construction of the statute's requirements is in harmony with its purpose. *See* text at note 9 *supra*.

20. Super.Ct.Civ.R. 50(b) is identical to Fed.R. Civ.P. 50(b).

21. According to W. Prosser, Law of Torts § 45 at 289 (4th ed. 1971):

. [T]he duties of the court in any case in which "proximate cause" is involved are as follows:

view the evidence and all reasonable inferences in the light most favorable to the party who obtained the jury verdict; we may affirm only if no juror could reasonably reach a verdict for the opponent of the motion. [*Martin v. Washington Hospital Center,* D.C.App., 423 A.2d 913, 916 n. 2 (1980) (quoting *Marcel Hair Goods Corp. v. National Savings & Trust Co.,* D.C.App., 410 A.2d 1, 5 (1979).]

*See generally Brady v. Southern Railway Co.,* 320 U.S. 476, 479–80, 64 S.Ct. 232, 234–235, 88 L.Ed. 239 (1943); *Klein v. District of Columbia,* 133 U.S.App.D.C. 129, 132, 409 F.2d 164, 167 (1969); 9 C. Wright & A. Miller, Federal Practice & Procedure § 2524 (1971 & Supp.1979); 5A Moore's Federal Practice ¶ 50.02[1], 50.07[2] (2d ed. 1980).[20] That standard applies to questions of proximate cause. *Brady, supra* at 483 (citing cases); *see Spain v. McNeal,* D.C.App., 337 A.2d 507, 509–10 (1975).[21]

Appellant was the only person who testified at trial about the circumstances surrounding the fall. In her direct testimony, she stated:

A. * * * *

 Gloria was in front of me and the door opened in. She was coming back into—towards me and I stepped back on my left foot and it twisted. I went to grab for the rails and I fell back down the steps.

Q. You said you went to grab for a rail?

A. Yes.

Q. Was there a rail there?

A. No, that's when I lost my balance, when I tried to grab for a rail.

 * * * * * *

2. The determination of causation in fact, in any case where reasonable men could not differ as to whether the defendant's conduct was, or was not, a substantial factor in producing the result. In cases where reasonable men might differ—which will include all but a few of the cases in which the issue is in dispute at all—the question is one for the jury. [Footnotes omitted.]
*Accord, Rich v. District of Columbia,* D.C.App., 410 A.2d 528, 532 (1979).

The trial court acknowledged that the evidence was sufficient for a finding that the District has been negligent in failing to maintain a handrail on the left side of the stairway (going up).[22] The trial court granted judgment *n. o. v.*, however, because it rejected appellant's testimony that her fall resulted from her grab at a missing handrail. *See* note 5 *supra*. The court's reasoning is unpersuasive.

The trial court's first point—that "the initial cause of the accident was the stumbling of the defendant on the staircase"— does not negate appellant's contention that, had there been a handrail, she would not have fallen. The issue is not whether the absence of a handrail caused appellant to "stumble"; the issue, rather, is whether the absence of a handrail was a proximate cause of appellant's fall and her resulting injury. One function of a handrail is to protect persons who happen to stumble on stairs from falling and causing themselves serious injury. *See, e. g., Noland v. Sears, Roebuck & Co.*, 207 Kan. 72, 76, 483 P.2d 1029, 1032–33 (1971); *Cossette v. Lepp*, 38 Wis.2d 392, 400, 157 N.W.2d 629, 633 (1968). Thus, a reasonable jury could have concluded that regardless of the "initial cause" of appellant's slip, she would not have fallen— and thus would not have been injured—had there been a handrail for her to grab for support.

Faced with similar fact patterns, courts in several jurisdictions have held that the issue of proximate cause should be left to the jury. *See Noland, supra*, 207 Kan. at 76, 483 P.2d at 1033; *Montgomery v. Engel*, 179 N.W.2d 478, 484 (Iowa 1970); *In re Lattimore's Estate*, 35 A.D.2d 1069, 316 N.Y.S.2d 363, 365 (1970); *Fay v. Allied Stores Corp.*, 43 Wash.2d 512, 518, 262 P.2d 189, 193 (1953); *Cossette, supra*, 38 Wis.2d at 399–400, 157 N.W.2d at 632. *But see Holmes v. Moesser*, 120 Cal.App.2d 612, 614, 262 P.2d 27, 29 (1953). In *Noland, supra*,

for example, the Supreme Court of Kansas concluded that the trial court erred in dismissing plaintiff's case on grounds of proximate cause where plaintiff had testified that she lost her balance on the top of a stairway and, because there was no handrail, had nothing to hold onto to regain her balance. In *Noland*, the court cited with favor the testimony of an architect who pointed out that "[i]f there was a handrail, you would have a chance to grab something to steady yourself but without a handrail you don't even have that last chance." In *Cossette, supra*, the Supreme Court of Wisconsin concluded (on defendant's appeal) that there was sufficient evidence for the jury to find proximate cause where the sole testimony as to causation was that the decedent had been found at the bottom of a railless stairway and had stated before he died that he "tripped and fell." Given this evidence, the court concluded, "the jury could reasonably infer . . . that the absence of the railing was a substantial factor in causing the accident." *Id.*, 38 Wis.2d at 400, 157 N.W.2d at 633.

The trial court's second point—its understanding that appellant only had grabbed for a rail on the *right* side of the stairway (going up), where there had never been a handrail—misinterprets the evidence. When questioned on cross-examination about which hand she had used to reach out to the rail, appellant replied, "I believe my left hand did." Counsel for the District then asked, "Your right hand did not grab, are you sure?" Appellant replied, "I don't remember, I might have tried to grab with both of them." The Corporation Counsel later impeached appellant by confronting her with testimony from her deposition in which she had stated she reached for a railing with her right hand. But this does not compel the factfinder to reject her trial testimony.

The trial court was not free to reject appellant's trial testimony, for "[t]he right

---

22. The District's investigator, Schumacher, testified that the open side of the stairway (with the missing handrail) was on the left side—going up—and that there had never been a handrail on the right side (which was bounded by a wall).

to determine the credibility of witnesses lies at the core of the jury's factfinding function." 9 C. Wright & A. Miller, *supra* § 2527, at 560 (quoting Cooper, *Directions for Directed Verdicts, A Compass for Federal Courts*, 55 Minn.L.Rev. 903, 926 (1971)).[23] Appellant's burden was to adduce evidence from which a jury reasonably *could* infer that the District's negligence in failing to maintain a handrail on the left side of the stairway (going up) was the cause of her fall. *See Rich v. District of Columbia, supra* at 536. Appellant met that burden. *See id.* at 533–34 & n. 6.

Accordingly, we reverse and remand the case for reinstatement of the jury's verdict in appellant's favor.

*So ordered.*

NEBEKER, Associate Judge, with whom Associate Judges KERN and HARRIS join, dissenting:

The trial court's entry of judgment in favor of the District should be affirmed on the ground that appellant failed to satisfy the mandatory notice requirement of D.C. Code 1973, § 12–309.

The section has been interpreted a number of times over the years by various courts of this jurisdiction. Satisfaction of the section's requirement of written notice of the approximate time, place, cause and circumstances of injury is a condition precedent to the maintenance of suit against the District. *Boone v. District of Columbia*, 294 F.Supp. 1156 (D.D.C.1968).[1]

Where, as here, a statute is clear and unambiguous and 'is specific in the details of its requirements as to the maintenance of an action against the Government, the courts are not at liberty to construe the statute other than according to its terms, or to depart from its clear requirements.' *McDonald v. Government of District of Columbia*, 95 U.S.App.D.C. 305, 306, 221 F.2d 860, 861 (1955). It follows that the notice is fatally defective if one or more of the statutory elements is lacking. [*Id.* at 1157.]

This court has held that the statute must be strictly construed to effectuate its legislative purpose because it is in derogation of the common law. *Braxton v. National Capital Housing Authority*, D.C.App., 396 A.2d 215, 217 (1978). *See also Pitts v. District of Columbia*, D.C.App., 391 A.2d 803 (1978). The majority's present treatment of the issue abandons this line of authority by accepting the April 4, 1975 letter from appellant's attorney as providing adequate notice,[2] despite the fact that the letter gave no information on the cause or the circumstances of the injury.

The requirement that the written notice reflect the cause of the injury must be read in the context of the entire statute. It says an action may not be maintained unless, *inter alia*, the cause of the injury is set forth. I submit this means that the notice must describe, at least in most conclusory terms, the cause of the injury about which an action may be brought. Here the notice

---

**23.** The fact that a witness has some interest in the case does not alter the general principle as it applies here. *See* 9 Wright & Miller *supra* § 2527, at 562 & cases cited at n. 11. In this jurisdiction, the testimony of parties "does not have to be accepted at its face value." *Kuzminsky v. Wagner*, D.C.Mun.App., 87 A.2d 411, 412 (1952). *Accord, Tan Top Cab Co. v. Shiller*, D.C.Mun.App., 125 A.2d 68, 70 & n. 5 (1956). Nevertheless, the question of such a witness's credibility remains a question for the trier of fact. *Kuzminsky, supra* at 412.

**1.** *See also Redlands High School District v. Superior Court of San Bernadino County*, 20 Cal.2d 348, 356, 125 P.2d 490, 495 (1942).

**2.** Appellant's additional contention, that telephone conversations between her attorney and a District housing inspector adequately placed the District on notice, fails in the face of our decision in *Pitts v. District of Columbia, supra.* We held in *Pitts* that oral communications do not satisfy the § 12–309 requirements. Similarly, in *District of Columbia v. World Fire & Insurance Co.*, D.C.Mun.App., 68 A.2d 222 (1949), the court stated that "verbal notice to a subordinate official cannot take the place of the written notice which the statute says must be given to the ... District government." *Id.* at 224. I do not understand that we are overruling those holdings.

merely stated that an "accident" had resulted in a "fall" and a "broken leg." The majority says this is enough and whether a possible actionable injury resulted must be the subject of further initiative by the city. Compare this paucity of information with the lengthy discussion of the incident in the police report in *Pitts v. District of Columbia, supra* a case relied on by both the appellant and the majority here. The *Pitts* police report included information indicating

> the identity of the persons present when the child fell, ... the name of the mother and father of the child, ... the fact that the child fell as she and her mother and sister were descending the stairs, ... the name of the security guard on duty in the building at the time of the accident, ... the number of the emergency vehicle which transported the injured child to the hospital and its crew's provisional diagnosis of her injuries, and ... the name of the treating physician at the hospital and his diagnosis and prognosis. [*Id.* at 809.]

In acknowledging a distinction between the nature of the typical police report and a notice drafted by an attorney, the court in *Pitts* stated:

> We recognize, at the outset, that a police report, by its nature, may not fully reflect every salient fact concerning the potential liability of the District with the same degree of clarity and specificity as a document drawn by an attorney. [*Id.* at 809.]

Curiously, in the instant case, rather than requiring a higher degree of clarity and specificity in a case involving an attorney-drafted notice, the majority here accepts an attorney's cryptic note containing much less information than did the police report in *Pitts.* And, the majority substantially bases its decision on the fact that the note was drafted by an attorney.

In relying on the fact that a lawyer sent the letter as somehow adding to its stature as a notice of an actionable injury, the majority has unwittingly taken the final step in interpreting the notice statute into oblivion. Surely, if a lawyer notice may be sufficient in the form this one took, then notice by a layman can hardly be expected to be more detailed. Inescapably, the majority has construed this statute to require nothing more in a notice than "I got hurt on [blank] date at [blank] place" which is owned by the City.

That appellant's letter fails to meet the statutory requirements is confirmed by the legislative history of the Act. "Witnesses appearing for the District stated that a general description of the place [of the injury] would be inadequate as the actual condition at the particular place must be inspected." H.R.Rep.No.2010, 72d Cong., 2d Sess. 2 (1933). Here, the letter gave, at best, a "general description of the place." It included an address but did not provide basic information, such as where inside the building the injury occurred.

The majority would do well to heed the words of Justice Cardozo, who, while construing a similar New York statute, dealt with reasoning not unlike that utilized by the majority.

> The Legislature has said that a particular form of notice, conveyed with particular details to particular public officers, shall be a prerequisite to the right to sue. The courts are without power to substitute something else.
>
> \* \* \* \* \* \*
>
> The argument is, however, that these words, which on their face are so plain as to be hardly subject to construction, do not mean what they seem to say, or that the meaning must be rejected as too oppressive to be true. [*Thomann v. City of Rochester*, 256 N.Y. 165, 172–173, 176 N.E. 129, 131 (1931).]

Our statute requires a written notice that includes, *inter alia*, information on the "cause, and circumstances" of the injury. The meanings of these two words are plain. The majority's attempt to re-define them to mean something else places the court in the position of rewriting the notice statute.

I would remand with instructions to the trial court to dismiss the complaint because of appellant's failure to provide the statutorily required notice.[3]

---

**3.** Once forced by the majority beyond the notice issue to the question of the trial court's grant of judgment *n. o. v.*, I would affirm. The majority opinion, while stating that courts in other jurisdictions have left the question of proximate cause to the jury on similar facts, acknowledges that there is conflicting authority. *Ante* at ——.

In this case, the evidence establishes that the fall was caused by appellant's foot twisting as she stepped back. Testimony of appellant and others puts a gloss on the entire matter. The incident occurred during a late Saturday night gathering at which there was dancing, drinking, and music. Appellant was very tired from having moved her residence earlier that day, and she had been drinking during the day and at the gathering.

Appellant failed to sustain the burden of establishing that the District's negligent failure to maintain the statutorily required handrail was the proximate cause of the injury. *Holmes v. Moesser*, 120 Cal.App.2d 612, 614, 262 P.2d 27, 20 (1953). *See also Klein v. Montgomery Ward & Co.*, 235 Or. 315, 384 P.2d 978 (1963).