**Carolyn GASKINS, Appellant,**

v.

**DISTRICT OF COLUMBIA HOUSING AUTHORITY, Appellee.**

**No. 05–CV–184.**

District of Columbia Court of Appeals.

Argued June 13, 2006.
Decided Aug. 3, 2006.

within one year.

Isaac H. Marks, Sr., Calverton, MD, for appellant.

Andrew Butz, with whom Michael M. Hicks, Dawn S. Singleton, Margaret McFarland, and Hans Froelicher, Washington, DC, were on the brief, for appellee.

Before FARRELL and GLICKMAN, Associate Judges, and NEBEKER, Senior Judge.

FARRELL, Associate Judge:

Plaintiff-appellant Gaskins brought suit for, among other things, wrongful death arising from a fire which occurred in her apartment, owned and operated by defendant-appellee the District of Columbia Housing Authority (DCHA or the Authority). Gaskins' two-year-old granddaughter, in the apartment at the time, died from resulting burns or smoke inhalation, and

the amended complaint alleged negligence by DCHA in not preventing the fire.[1] Gaskins also sought a declaratory judgment invalidating a $15,000 charge levied against her rental account by DCHA, which contended that she had caused the fire and resulting damage to the apartment. (Additionally, Gaskins alleged a violation of 42 U.S.C. § 1983, but later dismissed that count voluntarily.)

On DCHA's motion to dismiss (initially denied) and motion to reconsider, the primary issue before the court was whether, as DCHA asserted, Gaskins had failed to give the Authority timely written notice as required by D.C.Code § 6–205(a) (2001), a prerequisite to maintaining her suit for damage or personal injury.[2] The trial judge ultimately concluded, by analogy to settled law construing D.C.Code § 12–309 (notice as a condition of suit against the District of Columbia), that Gaskins had not given the notice required by § 6–205(a), in particular that she failed to state a "cause" of any injury or damage attributable to fault by the Authority. The judge therefore dismissed the complaint as to all counts. (Technically, as he recognized, he was granting summary judgment because he had "considered matters outside of the pleadings").

On appeal, Gaskins argues that she complied with § 6–205(a), asserting that it does not—any more than § 12–309—make "precise exactness [of notice] ... absolutely essential with respect to the details." *Romer v. District of Columbia,* 449 A.2d 1097, 1101 (D.C.1982) (citations and internal quotation marks omitted). For the reasons that follow, we sustain the judgment against Gaskins with respect to her counts alleging negligence, wrongful death, and a survival action. Even viewing together the several documents that she contends "disclose[d] ... the factual cause of the injury and a reasonable basis for [DCHA] anticipating legal action as a consequence," *Washington v. District of Columbia,* 429 A.2d 1362, 1366 (D.C.1981) (en banc), her notice did not provide the necessary "causal link between [DCHA] and [her] injury." *Id.* at 1367. She did not, in other words, give the Authority reason to anticipate and investigate a possible claim by her that it had caused the death of her grandchild or damage to her property.

At the same time, we find no basis on the present record for dismissal of Gaskins' separate request for a declaratory judgment that she was not liable for the $15,000 in repairs DCHA had assessed against her. That count—in essence, as the judge recognized, "a defense to the claim made by the [Authority]"—did not allege injury or damage to Gaskins at the hands of DCHA, and thus did not depend on prior compliance with § 6–205(a). Accordingly, we vacate the judgment and remand for further consideration of that count.

## I.

The fire broke out in Gaskins' apartment on June 1, 2002, and fire investigation and police reports prepared the same day de-

---

1. *See, e.g.,* Amended Complaint para. 10 ("Defendant negligently breached its duty to exercise reasonable and ordinary care to provide a reasonably safe [p]remises for plaintiff.").

2. D.C.Code § 6–205(a) provides:
   An action may not be maintained against the Authority for damages to property or personal injuries unless, within 6 months after the date on which the damage or injury was sustained, the claimant, or the claimant's agent or attorney, gives notice in writing to the Executive Director of the approximate time, place, cause and circumstances of the damage or injury. Any claim of which the Authority is not given notice in accordance with this provision shall be forever waived and barred.

scribed the accident. DCHA's Fire Safety Officer Wood arrived at the scene while the fire was in progress. His report of investigation stated that "[t]he point of fire origin was determined to be an electrical cord attached to the window air conditioner"; the cord "appeared to have overheated (based on burn patterns) igniting the living room sofa and nearby combustibles," with the fire or smoke then spreading throughout the apartment. Gaskins told Wood that she had "tried extinguishing the fire with a pillow after she pulled the air conditioner plug out of the wall socket when she noticed the air conditioner plug was on fire." Wood cited "reports that [Gaskins had] kept the air conditioner unit running almost 24 hours a day."

Metropolitan Police Department (MPD) officers inspected the scene and filed a similar report of investigation, which cited Gaskins' statement that "her air conditioner ... [had] started sparking at the plug in the wall," then caught fire and ignited the sofa. Gaskins tried to extinguish the fire but could not; she ran out of the apartment with her son, but "[u]pon getting outside ... realized [the child,] ... her granddaughter[,] did not make it out."

Based on the fire investigator's report, DCHA notified Gaskins of a damage-charge assessment against her rental account in the amount of $15,000. She retained an attorney and, on October 2, 2002, filed a grievance complaint with the Authority "contest[ing] the charge of $15,000.00 that has been assessed to her rental account for alleged fire damage to her ... unit." The complaint asked for removal of the charge and for DCHA to provide Gaskins with a copy of the DCHA file and all documents related to the apartment, as well as access to the unit. A letter of the same day from counsel to the Authority confirmed that he "represents Ms. Carolyn Gaskins, who is being assessed $15,000.00 by DCHA for [a] fire that occurred in her former apartment." The letter repeated the requests for the relevant DCHA file and for the property to be made "available for my inspection as soon as practicable." Gaskins simultaneously authorized a release to her attorney of "all records for the fire and fatality occurring on the premises." [3]

On December 3, 2002, after a conference with Gaskins and her counsel, a DCHA administrator proposed rejection of her request to lift the damage charge, which had been levied "pursuant to the terms of the dwelling lease" and the Authority's judgment that she or someone under her control had caused the accident. The written notice to Gaskins told her that she could request a formal, impartial hearing of the assessment and that if she did not it would become final; but that the failure to request a hearing would not "constitute a waiver of your right thereafter to contest DCHA's disposition of your grievance in an appropriate judicial proceeding." *See* 14 DCMR § 6303.3 (2004) (failure to request a hearing, while making the DCHA administrator's disposition "final, ... shall not constitute a waiver of the complainant's right to contest DCHA's actions in an appropriate judicial proceeding").

On January 14, 2003, Gaskins filed suit in Superior Court asking for declaratory relief from the $15,000 assessment and alleging negligence by DCHA for having failed to maintain the rental unit in a safe

---

3. On October 11, DCHA memorialized in a letter to Gaskins' attorney that an inspection of the apartment had indeed taken place, in which Gaskins' attorney was joined by a fire investigation expert working on Gaskins' behalf, as well as personnel from the District's fire department. (In the same letter DCHA renewed a request for the curriculum vitae of Gaskins' fire expert.)

condition, thereby causing damage to her personal property from the fire. She later amended the complaint by adding counts of wrongful death, a survival action, and violation of 42 U.S.C. § 1983, all essentially asserting that DCHA's negligence had caused her grandchild's death.

## II.

■ Gaskins contends that the trial judge applied an unduly restrictive reading of D.C.Code § 6–205(a) in concluding that she had not fulfilled the written notice requirement. She concedes, as she has to, that neither she nor her attorney wrote to DCHA within the prescribed 6–month period expressly "characteriz[ing] the injury [for which she later sued] and assert[ing] the right to recovery" from the Authority for the injury. *Washington*, 429 A.2d at 1366. She contends, instead, that her administrative complaint filed with DCHA on October 2, 2002, furnished the required notice because she attached to it both the DCHA fire investigation report and the MPD report which, she contends, "provide explicit detail of the approximate time, place, cause and circumstances of the fire damage to Ms. Gaskins and the death of her granddaughter." In her reply brief, she expands the list of relevant documents, asserting that DCHA received written notice of the cause and circumstances of her injury both from the above-mentioned writings and from her attorney's request for the file and to inspect the premises, as well as her authorization to release records "for the fire and fatality." We are not persuaded that these documents, individually or in the aggregate, were sufficient to reveal to the Authority the required basis for its potential liability.

■ This court has not interpreted or applied DCHA's notice provision in a published opinion, but the parties agree that, in general, our decisional law interpreting D.C.Code § 12–309 provides the necessary guidance in construing § 6–205(a).[4] DCHA points to one difference between the provisions that it says weakens Gaskins' reliance on the police and fire investigator reports. Unlike § 12–309, which makes "[a] report in writing by the [MPD], in regular course of duty, ... a sufficient notice under this section," § 6–205(a) has no equivalency provision of that kind, an omission DCHA says must be assumed to be deliberate. *See, e.g., Coburn v. Heggestad*, 817 A.2d 813, 823 (D.C.2003). Gaskins responds that she did not rely independently on the reports (as § 12–309, but not § 6–205(a), allows) but rather incorporated them by reference in the written notice she did give the Authority, just as though she had repeated their findings verbatim in her administrative complaint. While Gaskins has the better of this skirmish, neither the complaint to the Authority nor the reports attached to it, in our view, furnished the detail regarding "cause" that § 6–205(a) requires.

As with its statutory cousin § 12–309, the notice requirement of § 6–205(a) has "separate elements," *Washington*, 429 A.2d at 1365: the written notice must specify the time and place of the claimant's damage or injury, the "circumstances," and the "cause." DCHA does not dispute that Gaskins' administrative complaint, read with the attachments, adequately specified the time and place of the fire and resulting injury, nor does it seriously dispute that the "circumstances" were set out—specifically that a fire, caused by an overheated electrical cord attached to the

---

**4.** Also, as "[t]his court reviews questions of compliance with D.C.Code § 12–309 *de novo*," *Chidel v. Hubbard*, 840 A.2d 689, 694 (D.C.2004), we will do the same with regard to § 6–205(a).

air conditioner, factually caused the injuries for which she later sued. But DCHA argues, correctly we conclude, that nothing in the complaint or attachments placed the Authority on reasonable notice that any liability on its part might eventually be claimed to have caused the fire.

■ To start with, the complaint and attached reports did not mention any "injury" Gaskins had suffered in the form either of the child's death or of her own loss of property. While the reports did, of course, mention the death and the fire as its cause, and Gaskins unquestionably was injured deeply by that loss, the complaint mentioned only the damage-assessment against her rental account and her intention to contest it. In that light, the reference to the child's death in the reports or to the "fatality" in the attorney's request to see the agency's files did not suffice to notify DCHA that Gaskins was asserting, or even contemplating, a claim for the death and her loss of property. Second, and more importantly, the complaint and reports were insufficient to apprise DCHA of a potential claim that *it* was responsible for the child's death through negligence. "[W]ith respect to the 'cause' element[,]" notice is "sufficient if it recites facts from which it could be reasonably anticipated that a claim against the District might arise." *Washington*, 429 A.2d at 1366 (citation and quotation marks omitted). At a minimum, that notice must "describe[ ] the injuring event with sufficient detail to reveal, in itself, a basis for [DCHA's] potential liability." *Id.* (footnote omitted). The

reports here identified the likely factual cause of the fire, but assigned no responsibility for it; the description thus provided no detail sufficient to reveal a basis for believing DCHA might have contributed to the fire—say, by maintaining unsafe electrical outlets in the apartment.[5] Given the variety of conditions or causes that might have made the electrical cord overheat, it is unreasonable to impute to the Authority knowledge that Gaskins, simply by disputing the damage charge and attaching the fire reports, might be considering a claim for injury traceable to actions or inaction of its own.

In that respect the notice here differs markedly from the police report we found sufficient notice in *Pitts v. District of Columbia*, 391 A.2d 803 (D.C.1978). The report explained that a three-year-old child had slipped and fallen through a guard rail while descending a flight of stairs in a District-owned building. *See id.* at 809. As our decision implicitly recognized, the possibility that this accident would be viewed as avoidable had the District installed safer guard rails, and that a claim for its failure to do so would be made, was entirely realistic. By contrast, the absence of any "specifi[cation here] with respect to ... cause" other than a fire in an electrical cord or plug, and the variety of conditions that could have caused the fire, made an "inference of potential liability [on DCHA's part] ... too remote to suggest the need for a focused investigation by [the Authority]." *Doe by Fein v. District of Columbia*, 697 A.2d 23, 27, 29 (D.C.1997)

5.  Gaskins argues that the very fact that the fire investigation report mentioned her statement that "the air conditioner plug was on fire" gave the Authority reason to believe she might claim that a defective wall socket— something under its constructive control— caused the fire. Beyond the fact that the report identified "[t]he point of fire origin" to be simply "an electrical cord attached to the window air conditioner," and went on to "rule[ ] out" all other "electrical ... causes," a broad array of conditions may cause an electrical cord to overheat and catch fire, and nothing in the documents identified defective outlets—much less DCHA's failure to maintain them properly—as a likely or even possible cause of the fire.

(internal quotation marks omitted); *see also Washington*, 429 A.2d at 1366 n. 12 ("The written notice ... will not suffice if, under a reasonable construction, it suggests a basis for the claim that differs from the one eventually alleged.").[6]

Nor does it change the analysis that Gaskins' administrative complaint was filed by an attorney, who simultaneously asked leave to inspect the damaged premises (in the company of an expert) and for the Authority's file concerning "the fire and fatality." The attorney introduced himself as "represent[ing] Ms. Carolyn Gaskins, who is being assessed $15,000.00." Assuming, as would be natural, that his purpose in investigating was to learn *whether* something other than conduct by Gaskins had ultimately caused the fire (a perhaps necessary predicate to obtaining removal of the assessment), that is very different from either "assert[ing] the right to recovery" against DCHA or setting forth "a reasonable basis" for the Authority's potential liability. *Washington*, 429 A.2d at 1366. Otherwise, simple retention of a lawyer to investigate possible causes of a fire—for which the tenant-client has initially been blamed—would suffice to notify the Authority of a potential ground for its liability and the need to conduct a "properly focused investigation" into it. *Id.* at 1367. We do not think that can be correct under a statute with whose terms, as we have repeatedly said of § 12–309, "strict compliance ... is mandatory." *Chidel, supra* note 4, 840 A.2d at 695 (citation and internal quotation marks omitted).

That more was required than Gaskins has shown is confirmed by the notice we found sufficient in *Washington, supra.*

There the plaintiff had retained an attorney after falling in a District-owned building and breaking her leg, and the attorney wrote to the Mayor "assert[ing a] causal link between the District and [the plaintiff's] injury [that] was clear from the letter." 429 A.2d at 1367. Indeed, we characterized the letter as "asserting a [legal] claim," *id.* at 1367 n. 17, because though it did not threaten to file a suit, it referred "to the fact that [the plaintiff] had retained counsel to write to the District to *pursue 'losses sustained by her'* as a result [of her fall in the District-owned building]." *Id.* at 1366–67 (emphasis added). We stressed that "notice of a fall in a public housing unit, resulting in a broken leg, does not in itself imply that a claim against the District might arise," *id.* at 1367 n. 17 (citation and internal quotation marks omitted); but in *Washington* the asserted link of causation between the accident and possible liability of the District was clear enough to signal "a potential lawsuit based on the District's legal responsibility for the premises." *Id.* at 1367.

No such causal connection appears in the facts brought to the Authority's attention. No document asserted a right of recovery against DCHA, and none recited facts reasonably implying that Gaskins believed her losses stemmed from any fault of the Authority. What the documents do convey is that, besides contesting her responsibility for the apartment damage, she wanted the opportunity to investigate its causes. But she as yet could not, and thus did not, offer a description of "the injuring event with sufficient detail to reveal, in itself, a basis for [DCHA's] potential liability." *Id.* at 1366.

---

6. Because DCHA's investigation of the fire on the day it occurred "did not reveal any basis for [the Authority's potential] liability," *Doe by Fein*, 697 A.2d at 29, the report summarizing the investigation cannot do service for the details that the statute required Gaskins to furnish—sufficient, that is, to trigger a "focused investigation" by the Authority into its own "potential liability."

## III.

■ Gaskins, as noted at the start, also sought a declaratory judgment invalidating the $15,000 assessment that DCHA levied against her rental account. As the Authority concedes (at least tacitly), that claim was not subject to prior compliance with § 6–205(a), since it was not one for damages to property of Gaskins or for personal injury to herself or others—rather it was, as the trial judge himself recognized, "a defense to the [administrative] claim made by the [Authority]." DCHA also makes no argument that Gaskins failed to exhaust this claim for relief administratively. Indeed, in issuing the assessment, DCHA told Gaskins—in keeping with 14 DCMR § 6303.3—that her failure to request a formal administrative hearing on the assessment would not "constitute a waiver of [her] right ... to contest" the assessment "in an appropriate judicial proceeding." And, because DCHA argues no other basis on which the dismissal of that count may be upheld at this point, we must vacate that portion of the trial judge's ruling.

## IV.

Accordingly, we affirm the dismissal of the counts alleging negligence, wrongful death, and a survival action, but vacate the judgment with respect to the declaratory judgment and remand for further proceedings as to it.

*So ordered.*