**Jane DOE, A Minor Child, By Her Next Friend, Leslie G. FEIN, Appellant,**

v.

**DISTRICT OF COLUMBIA, et al., Appellees.**

**No. 96–SP–1242.**

District of Columbia Court of Appeals.

Argued Feb. 4, 1997.

Decided June 19, 1997.

---

Richard A. Seligman, with whom Jonathan Zucker, Washington, DC, was on the brief, for appellant.

Donna M. Murasky, Assistant Corporation Counsel, with whom Charles F.C. Ruff, Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellees.

David M. Becker, Katherine H. Gibson, and Arthur B. Spitzer, Washington, DC, filed

a brief for the American Civil Liberties Union of the National Capital Area as Amicus Curiae.

Before TERRY and STEADMAN, Associate Judges, and BELSON, Senior Judge.

TERRY, Associate Judge:

We are presented here with a question of law certified to us under D.C.Code § 11–723 (1995) by the United States Court of Appeals for the District of Columbia Circuit.[1] The issue is whether the plaintiff's claims for negligence against the District of Columbia and two of its employees are barred because of her failure to give the requisite notice to the District under D.C.Code § 12–309 (1995).[2] The precise question that has been certified for review is:

> Are Jane Doe's claims for negligence, based on the District of Columbia Prevention of Child Abuse and Neglect Act of 1977, D.C.Code §§ 2–1351 to –1357, 6–2101 to –2127, against the District of Columbia and two of its employees barred under D.C.Code § 12–309?

*Doe ex rel. Fein v. District of Columbia,* 320 U.S.App. D.C. 198, 213, 93 F.3d 861, 876 (1996). We hold that appellant, Jane Doe, has failed to satisfy the requirements of section 12–309, and that her claims against the District of Columbia and its employees are therefore barred.

## I. PROCEDURAL HISTORY

Jane Doe, a minor, filed suit in the United States District Court against the District of Columbia and two of its employees, alleging that she had been injured as a result of the District's failure to investigate her case and protect her from abuse and neglect. Her complaint was based on the District of Columbia Prevention of Child Abuse and Neglect Act, D.C.Code §§ 6–2101 *et seq.* (1995), the federal Child Abuse Prevention and Treatment Act, 42 U.S.C. § 5106a (1994), and the Due Process Clause of the Fifth Amendment.

The District Court dismissed Doe's federal and constitutional claims under Fed.R.Civ.P. 12(b)(6) and dismissed her local law claim as barred by D.C.Code § 12–309. The court concluded that a letter from Doe's attorney to the Mayor of the District of Columbia in January 1990 did not satisfy the notice requirement of section 12–309, and that the relevant police reports were also insufficient to provide the requisite notice.[3] The United States Court of Appeals affirmed the dismissal of Doe's federal and constitutional claims, but held that it could not determine whether or not Doe's local law claim was barred by D.C.Code § 12–309. Accordingly, the court reserved ruling on that claim and certified the matter to us.

## II. THE FACTS [4]

In August 1988 the District determined that Jane Doe's mother might be unable to house and feed her three minor children, who were living with her. Because the mother had not paid the rent on her apartment since January, a social worker in the Department

---

**1.** *See Penn Mutual Life Insurance Co. v. Abramson,* 530 A.2d 1202, 1205–1208 (D.C.1987) (describing the District of Columbia's statutory scheme for certification of questions of law).

**2.** Section 12–309 provides:

An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage. A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section.

**3.** The court ruled that the letter was sent after the six-month statutory time limit had expired and that it did not sufficiently identify the location of Doe's alleged injury. With respect to the police reports, the court held that they failed to identify any conduct that might suggest liability on the part of the District.

**4.** Our factual statement is drawn substantially from the opinion of the United States Court of Appeals, which in turn is based on the allegations made in appellant's complaint. Those allegations were taken to be true for purposes of the appeal because the complaint had been dismissed for failure to state a claim under Rule 12(b)(6). *Doe, supra,* 320 U.S.App. D.C. at 200 n. 1, 93 F.3d at 863 n. 1.

of Human Services (DHS) concluded after a home visit that the mother and her children were in imminent danger of being evicted and would need counseling and assistance in finding another place to live. The social worker recommended that the family be referred to the Continuing Services Branch. The mother was later evicted from her apartment, and, according to the complaint filed in the District Court, "no further efforts were made by the Continuing Services Branch to provide services necessary to protect [Jane Doe]."

In the early part of January 1989 the mother left the three children, including Jane Doe, in the care of a friend, who was Jane Doe's godmother. The godmother lived in a public housing apartment with her four children, her sister, and her sister's three children. The apartment was infested with roaches and rodents and had substantial housing code violations which endangered Jane's health and safety. Shortly thereafter, on January 20, Jane Doe's maternal grandmother found Jane's two siblings abandoned on her front porch. Unable to care for them herself, the grandmother called the police, and DHS placed both children in a shelter care facility. Jane Doe, however, remained in the care of her godmother.

Although DHS had assigned a social worker to the children's case, the grandmother's complaints about the care that Jane was allegedly receiving in the godmother's home were unavailing. No DHS employee investigated Jane Doe's living conditions or responded to requests that she be removed from the godmother's care. At that time Jane Doe was two and a half years old.

On February 23, 1989, Jane Doe suffered severe burns on more than one-third of her body, causing permanent disfigurement, from scalding water in a bathtub in the godmother's home. When Jane's grandmother saw the burns on March 2, she immediately called an ambulance, and Jane was taken to Children's Hospital. The police interviewed the godmother, who admitted that she had not obtained any medical treatment for the child's injuries. She was arrested on a charge of mayhem, to which she eventually pleaded guilty. In the course of their investigation, the police prepared and filed certain reports which are at issue in this case.

On March 3 Jane Doe was placed in the shelter care custody of DHS. A neglect petition, signed by the social worker, was filed in the Superior Court, which stated *inter alia* that Jane Doe remained in the legal custody of her mother. Jane stayed in the hospital for more than five months, remaining in the custody of DHS, until she was conditionally released by the court on August 11 to her grandmother. On December 11, 1989, a judge of the Superior Court found, as a result of Jane's injuries, that she was an abused and neglected child.

On January 9, 1990, ten and a half months after Jane Doe was injured but less than five months after she was released from the hospital, counsel representing her in the neglect proceeding wrote to the Mayor of the District of Columbia. His letter said, in part:

> I am writing this letter on behalf of my client, [Jane Doe], as well as members of her immediate family who may bring actions based on damages they have incurred due to [Jane's] suffering permanent disability.
>
> This letter constitutes notice to the District of Columbia, pursuant to 12 D.C.Code Section 309, of injuries suffered by Ms. [Jane Doe].

The letter went on to describe those injuries and asserted that DHS had failed to investigate the matter and failed to take adequate steps to protect Jane Doe. It concluded, "The agency [DHS] breached a special duty of care owed to [Jane Doe]."[5]

In May 1991 the Superior Court committed Jane Doe to the care and custody of the District of Columbia pursuant to D.C.Code § 16-2320 (1989). Nearly one year later, in April 1992, the Superior Court appointed Leslie Fein, an attorney, as guardian *ad litem* for Doe to investigate her legal claims. On January 13, 1993, the guardian *ad litem* filed this suit on Jane Doe's behalf in federal court. The complaint alleged that if District

5. *See Turner v. District of Columbia,* 532 A.2d 662 (D.C.1987) (discussing the duty of the District to an abused child who has been the subject of a complaint to DHS).

of Columbia authorities had responded properly to the grandmother's reports of abuse and neglect by investigating Jane Doe's case, they would have removed Jane from the home of her godmother before she was injured. Jane's District of Columbia claim was based on the alleged deprivation of "a panoply of rights" conferred by the District of Columbia Prevention of Child Abuse and Neglect Act.

## III. SECTION 12-309

### A. The police reports

Appellant contends that the police reports filed in the wake of her physical injuries provided the District of Columbia with adequate notice, under section 12-309, of her claims against the District. We cannot agree.

■ Although section 12-309 expressly provides that a written police report can be "a sufficient notice," the police report must contain the same information that is required in any other notice given under the statute. *Campbell v. District of Columbia*, 568 A.2d 1076, 1078–1079 (D.C.1990). Thus, in order to be considered a sufficient notice, a police report must include, in the words of the statute, "the approximate time, place, cause, and circumstances of the injury or damage." *See, e.g., Miller v. Spencer*, 330 A.2d 250, 252 (D.C.1974).

■ A notice is sufficient "if it recites facts from which it could be reasonably anticipated that a claim against the District might arise." *Pitts v. District of Columbia*, 391 A.2d 803, 809 (D.C.1978). "Such notice would suffice, therefore, if it ... described the injuring event with sufficient detail to reveal, in itself, a basis for the District's potential liability." *Washington v. District of Columbia*, 429 A.2d 1362, 1366 (D.C.1981) (en banc). The specificity requirement applicable to any form of notice, including police reports, is rooted in the notion that "to re-

quire any less would place an intolerable investigative burden on the District." *Miller v. Spencer, supra*, 330 A.2d at 252.

■ Although the police reports in this case recite the time, place, cause, and circumstances of Jane Doe's injuries,[6] they fail to disclose or suggest any basis for liability on the part of the District of Columbia. The relevant injury for purposes of this case is not the physical harm that Jane suffered from her burns; rather, it is the District's alleged failure to intervene and take custody of Jane before she received those burns. Because the police reports do not suggest any failure by DHS to intervene and take Jane out of what it suspected was an abusive or neglectful home environment, we conclude that they failed to meet the requirements of section 12-309.

■ The content requirements of any notice under section 12-309 are to be interpreted liberally, and in close cases doubts are to be resolved in favor of compliance. *See, e.g., Wharton v. District of Columbia*, 666 A.2d 1227, 1230 (D.C.1995). But this is not a close case. Unlike *Wharton*, in which we had to decide whether a notice adequately recited the time and date of the claimant's injury,[7] our inquiry in this case must focus on whether the police reports adequately described *the District's role* in Jane's injuries. Since the purpose of section 12-309 is to allow the District to conduct a prompt investigation of the injured person's claim, it is reasonable to require specificity with respect to the cause and circumstances of the injury. Any uncertainty about the nature of the District's connection to the claimant's injury would surely hinder such an investigation.

■ This case, in our view, is analogous to *Braxton v. National Capital Housing Authority*, 396 A.2d 215 (D.C.1978), in which a public housing tenant claimed that District employees had allowed thieves to steal a key which was under their control, in order to gain access to her apartment and steal her

---

**6.** According to the police reports, Jane was burned by hot water in a bathtub on February 23, 1989, at 1:56 p.m., at the residence of her godmother. Jane's mother had left her in the godmother's custody over the objections of Jane's grandmother.

**7.** The notice stated that the injury occurred on April 4 at 8:45 a.m., when in fact the claimant was injured on April 5 at 8:45 p.m. *Wharton*, 666 A.2d at 1229.

property. We held that a police report in that case was insufficient to constitute notice under section 12–309 because there was no indication in the report that District employees were involved in the events leading up to the burglary and theft. *Id.* at 217. As in *Braxton,* the police reports filed in the instant case do not refer to any direct involvement by the District in determining Jane's primary caretaker or residence. Appellant argues, and we agree, that section 12–309 does not require "precise exactness" with respect to the details of the police reports. *See, e.g., Washington, supra,* 429 A.2d at 1365. However, while the police reports in this case certainly suggest that Jane Doe's mother and godmother were incompetent caregivers, they do not establish any prior knowledge *by the District* that Jane had been abandoned, neglected, or abused.[8]

■ The only suggestion in the police reports of any dereliction of duty by DHS is the statement in one of the reports that Jane's two siblings were living in foster care when Jane was burned. We reject appellant's assertion that this statement was sufficient to put the District on notice of its liability to Jane Doe based on DHS's alleged failure to comply with its statutory duty under D.C.Code §§ 6–2104(b)(5) and (6) (1995). Those provisions require the District to determine the living conditions of other children in the home whenever it investigates a report of abuse or neglect of a particular child. In this case, however, immediately after the notation that Jane's siblings were in foster care, the police report specifically stated that there had been "no allegation of abuse." There is no indication in any of the police reports that Jane had been neglected before she suffered her injuries. That Jane's mother had sent her to live with her godmother is unremarkable in itself and is not sufficient, in our view, to suggest abuse or neglect within the contemplation of section 6–2104.

■ Appellant relies on *Rieser v. District of Columbia,* 183 U.S.App. D.C. 375, 390, 563 F.2d 462, 476, *vacated on grant of rehearing en banc,* 183 U.S.App. D.C. 395, 563 F.2d 482

(1977), *reinstated in part,* 188 U.S.App. D.C. 384, 580 F.2d 647 (1978) (en banc), and *Allen v. District of Columbia,* 533 A.2d 1259, 1262 (D.C.1987), for the proposition that, to the extent that the police reports are deficient, they can be supplemented by information in other files at DHS, the Office of the Corporation Counsel, and the United States Attorney's Office. We disagree. Section 12–309 makes clear that police reports are the only acceptable alternatives to a formal notice. The court is not free to go beyond the express language of the statute and authorize any additional documents to meet its requirements. *See Campbell, supra,* 568 A.2d at 1078–1079 (refusing to consider fire department report as "equivalent" to police report); *Washington, supra,* 429 A.2d at 1367 (court held that letter from plaintiff's counsel gave sufficient notice, and "stress[ed] that in arriving at this result we rely solely on the contents of the April 4 letter").

*Rieser* and *Allen* can be distinguished on other grounds as well. In *Rieser* the court concluded that relevant police reports satisfied the statutory notice requirement because they detailed the rape and murder of a woman at her apartment complex and the fact that a District parolee who worked at the complex had been arrested for the crimes. Reasoning that section 12–309 requires police reports to set forth "the *causal* connection between the injury and any negligent acts of [the District's] agents," the court held that the police reports "conclusively show[ed] that the District had actual notice of the way in which all of these facts interacted to give rise to the District's potential liability." *Rieser, supra,* 183 U.S.App. D.C. at 389–390, 563 F.2d at 476–477 (emphasis in original). In *Rieser* the causal connection between the District's decision to release a prisoner on parole and the victim's death was sufficiently apparent from the police reports, without reference to any other document. In this case, by contrast, any connection between Jane Doe's injuries and the District's potential liability was far from obvious from the police reports.

---

8. Although the grandmother allegedly complained to DHS about Jane Doe's living conditions before March 2, the police reports do not refer to any such complaints.

The *Allen* case is equally unhelpful to appellant. In *Allen* we rejected a claim that an arrest report put the District on notice of the arrestee's potential claims for false arrest, assault, and battery. Discussing the "cause" element required by section 12–309, we quoted the following language from the *Washington* case:

> [T]he written notice or police report must disclose both the factual cause of the injury and a reasonable basis for anticipating legal action as a consequence. Such notice would suffice, therefore, if it either characterized the injury and asserted the right to recovery, or—without asserting a claim—described the injuring event with sufficient detail to reveal, in itself, a basis for the District's potential liability.

*Washington, supra,* 429 A.2d at 1366. We then observed that the circumstances of the injury must be detailed with sufficient particularity "to allow the District to conduct a prompt, properly focused investigation of the claim." *Allen,* 533 A.2d at 1262 (citing *Washington* ). In Jane Doe's case, the police reports themselves did not reveal any basis for the District's liability, and any inference of potential liability was too remote to suggest the need for a "focused investigation" by the District.

▌ Appellant cites several cases from other jurisdictions for the proposition that her claim should be permitted to go forward, despite technical non-compliance with section 12–309, because the District had actual notice of her claim and therefore would not suffer any prejudice. Her reliance on those cases is misplaced. It is the unambiguous law of the District of Columbia "that the requirements of the statute as to written notice are mandatory, and that for failure to give such written notice the claim ... [cannot] be maintained." *District of Columbia v. World Fire & Marine Insurance Co.,* 68 A.2d 222, 224 (D.C.1949). Whether the District had actual notice of Jane Doe's potential claim is not an appropriate consideration under section 12–309. *See Campbell, supra,* 568 A.2d at 1078.

For these reasons we hold that the police reports in this case cannot meet the notice requirements of section 12–309.

## B. Equitable tolling

Immediately after Jane Doe's grandmother discovered her physical injuries, Jane was taken to Children's Hospital for medical treatment. The following day she was placed in shelter care, and a neglect petition was filed in the Superior Court which stated that Jane was still in the legal custody of her mother. Jane remained in the hospital, and in the physical custody of DHS, until she was released to her grandmother's custody more than five months later. In January 1990, ten and a half months after Jane was injured, but only five months after her release from the hospital, Jane Doe's attorney sent a letter to the Mayor purporting to give notice under section 12–309.

▌ Section 12–309 explicitly provides that notice must be given to the Mayor within six months after the injury was sustained. *See, e.g., District of Columbia v. Ross,* 697 A.2d 14, 18 (D.C.1997). The statute contains no exception to the time limit. Appellant argues, however, for an equitable tolling exception because it was either unreasonable or impossible for her to comply with the statute. We hold that the statute does not permit equitable tolling.

▌ "[B]ecause it is in derogation of the common law principle of sovereign immunity, section 12–309 is to be construed narrowly against claimants." *District of Columbia v. Dunmore,* 662 A.2d 1356, 1359 (D.C.1995) (citations omitted). Thus we held, for example, in *Gwinn v. District of Columbia,* 434 A.2d 1376, 1378–1379 (D.C.1981), that "[i]n light of statutory language, express congressional intent and the strict interpretation attendant to statutes in derogation of the common law," the statute could not be tolled during the plaintiff's minority (he was eleven at the time he was injured). Acknowledging that our decision "may work hardships to prospective litigants who have not reached the age of majority before the time within which notice of their respective claims must be given," we concluded nevertheless that "any potential remedy rests in the hands of the legislature." *Gwinn,* 434 A.2d at 1379

(footnote omitted).[9] In light of *Gwinn*, any tolling exception in favor of Jane Doe would have to be premised on some obstacle to compliance other than her mere status as a minor, even a very young minor.

Appellant maintains that section 12–309's notice period should be tolled in her case because she was effectively prevented from giving timely notice by the fact that she was in shelter care, in the physical custody of DHS, for almost six months after she suffered her injuries. She relies on *Maier v. City of Ketchikan*, 403 P.2d 34 (Alaska 1965), *overruled on other grounds by Johnson v. City of Fairbanks*, 583 P.2d 181 (Alaska 1978), which allowed equitable tolling when the injuries suffered at the hands of the government prevented the plaintiff from complying with the applicable notice requirement. The plaintiff in *Maier* "was severely injured when a metal survey rod he was holding came into contact with an electrical power line owned by the City of Ketchikan." 403 P.2d at 35. He alleged in his complaint that the power line was negligently maintained by the city so as to be dangerous to anyone working near it. His injuries, however, were so disabling, both physically and mentally, that he failed to file a notice of his claim with the city until almost two months after it was required by the city charter to be filed. The court held that his untimely filing could be "excused because of the disability from which the claim arose and until a reasonable time after the disability cease[d]." *Id.* at 37. In Jane Doe's case, however, there is nothing to suggest that the District's alleged negligence somehow prevented her (through counsel), or any family member on

her behalf, from giving notice under section 12–309.

In any event, this court in *Hill v. District of Columbia*, 345 A.2d 867 (D.C.1975), on similar facts, reached a result contrary to that in *Maier*. The plaintiff in *Hill* was severely injured in a fire which was allegedly the result of negligence by the District of Columbia. He remained hospitalized for five months, frequently under sedation for long periods, and then received outpatient treatment four times a week for some time after his release. Because of his injuries, he did not obtain counsel or give notice to the District under section 12–309 until more than a month after the statutory deadline. His negligence action against the District was dismissed for failure to comply with section 12–309, and on appeal we affirmed that dismissal, specifically rejecting the argument "that we should construe § 12–309 as affording him a reasonable period of time within which to furnish notice after he regained his ability to do so...." *Id.* at 868. We are bound by *Hill*, as well as *Gwinn*, and conclude that these two cases preclude us from recognizing any equitable tolling exception.[10]

■■■ The situation presented here is somewhat unusual because, even though Jane remained in the legal custody of her mother for the duration of the notice period, the mother had essentially abandoned her. *Doe, supra*, 320 U.S.App. D.C. at 210, 93 F.3d at 873. Nevertheless, though Jane may have been *de facto* abandoned, that fact does not warrant any tolling of the six-month notice period, despite the fact that Jane was too young to file her own notice under section 12–309.[11] Such a strict interpretation of the

9. Appellant relies on a number of cases from other jurisdictions which conclude that a statute like D.C.Code § 12–309 ought to be subject to an equitable tolling exception. *E.g., City of Colorado Springs v. Colburn*, 102 Colo. 483, 81 P.2d 397 (1938); *Langevin v. City of Biddeford*, 481 A.2d 495 (Maine 1984). This case, however, is governed by the law of the District of Columbia, as set forth in cases such as *Gwinn*, which makes clear that there is no such exception in the District.

10. We suggested in *Gwinn* that a tolling exception might be warranted in situations where the government "takes some action that makes timely compliance unreasonable or impossible."

*Gwinn, supra*, 434 A.2d at 1379 n. 4. Assuming for the sake of argument that such an exception is possible, it does not fit this case. There is nothing in the facts before us to suggest that Jane's hospitalization or her placement in shelter care hindered her mother or her grandmother (or anyone else) from giving notice to the District on her behalf.

11. Appellant cites a New York case for the proposition that she should be protected by equitable tolling because of her status as an abandoned child. In *Gibbs v. City of New York*, 23 A.D.2d 665, 257 N.Y.S.2d 242 (1965), the court allowed an equitable tolling exception to a similar notice requirement when "the prospective defendant

statute may yield an unfortunate result, but we are bound by our prior decisions, which make inexorably clear that it is the role of the legislature, not this court, to create exceptions to the statute.[12]

## IV. CONCLUSION

We hold that the police reports filed after Jane Doe suffered her physical injuries were insufficient under D.C.Code § 12–309 to provide the District with notice of her potential claims. We further hold that District of Columbia law does not recognize or permit an equitable tolling exception to the six-month notification limit imposed by section 12–309, and that appellant's claims against the District are therefore barred for failure to comply with that statute.[13] Thus our answer to the certified question is "yes."

In accordance with D.C.Code § 11–723(g), the Clerk shall transmit a copy of this opinion to the United States Court of Appeals for the District of Columbia Circuit and to each of the parties.

*It is so ordered.*

(the City) and its own agency were the only parties reasonably situated to ascertain and prosecute the claim...." *Id.* at 665–666, 257 N.Y.S.2d at 243. Jane's case is different because both her mother and grandmother were in a position to ascertain and prosecute her potential claims against the District, even though they inexplicably failed to do so.

12. Appellant suggests that a failure to recognize an equitable tolling exception to section 12–309 would make the statute unconstitutional as ap-

plied. Because the constitutionality of section 12–309 is beyond the scope of the certification, we cannot consider it here. If it is still an issue, we assume that the United States Court of Appeals will address it.

13. Given our holding on the equitable tolling issue, we need not consider whether the letter sent by appellant's counsel to the Mayor in January 1990 was sufficient to constitute notice under section 12–309.