Dr. Ira W. CHIDEL, et al.,
Appellants/Cross–
Appellees,

v.

Virginia HUBBARD, Appellee/Cross–
Appellant.

Nos. 02–CV–1390, 02–CV–1405.

District of Columbia Court of Appeals.

Argued Oct. 8, 2003.
Decided Jan. 15, 2004.

Albert Brault, Washington, DC with whom Joan F. Brault, was on the brief, for appellants/cross-appellees.

Frederic W. Schwartz, Jr. with whom Daniel E. Schultz, Washington, DC, was on the brief, for appellee/cross-appellant.

Before STEADMAN, FARRELL, and WASHINGTON, Associate Judges.

WASHINGTON, Associate Judge:

Appellants, Dr. Ira W. Chidel ("Dr. Chidel"), Wener, Boyle & Associates, P.A. ("Wener"), and cross-appellant, Virginia Hubbard ("Ms. Hubbard") challenge the trial court's resolution of the parties' claims for contribution arising from Ms. Hubbard's medical malpractice suit. Dr. Chidel and Wener contend that the trial court should have permitted Dr. Chidel to recover a *pro rata* share of Ms. Hubbard's settlement with the District, despite his failure to comply with the notice requirements of D.C.Code § 12–309 (2001). Ms. Hubbard, however, claims that *neither* Dr. Chidel nor Wener are entitled to recover a share of her settlement with the District. Dr. Chidel and Wener further argue that the trial court erred in ruling that interest on the judgments against them would accrue from the date of the initial judgment.

We agree with the trial court that Dr. Chidel's failure to timely notify the District precluded him from recovering a *pro rata* share of Ms. Hubbard's settlement with the District. Although we recognize that Wener gave timely statutory notice informing the District of its potential liability as Dr. King's employer, we find this notice legally insufficient to permit a claim against the District for the negligent operation of the Southwest Clinic. In light of the trial court's finding that there were three joint tortfeasors, and our determination that Dr. Chidel and Wener are entitled to recover from only one, we conclude that Dr. Chidel and Wener may recover a contribution of $333,333.33 to offset the $1,000,000 jury verdict against them. Finally, we concur with the trial court that interest properly ran from the date of the initial verdict. Therefore, we affirm in part, vacate in part and remand for entry of judgment consistent with this opinion.

I.

More than a decade ago, Ms. Hubbard's doctors negligently failed to inform her of a suspicious mass found on her mammogram. At the time, Ms. Hubbard's primary care physician was Dr. David King ("Dr. King"), an employee of the Southwest Clinic which is operated by the District of Columbia. On January 25, 1993, Dr. King referred her to Greater Southeast Community Hospital ("GSECH") to have a mammogram screening. Ms. Hubbard visited GSECH on March 5, 1993, at which time the mammogram was taken. Dr. Chidel, a radiologist at GSECH, reviewed the mammogram, noting the suspicious mass in his report and indicating, "Dr. King has been notified of these findings." Dr. King, however, denied ever having been informed of the abnormal mammogram results. Ultimately, Ms. Hubbard did not learn about the mass until July of the following year when subsequent tests revealed that the mass was cancerous and had metastasized to her lymph nodes, requiring both a mastectomy and chemotherapy.

On May 17, 1995, Ms. Hubbard filed a complaint against GSECH, Dr. Chidel,

and Dr. King alleging medical malpractice.[1] During the discovery process, Ms. Hubbard learned that Wener was Dr. Chidel's actual employer and was granted leave to file an amended complaint including Wener as a defendant in April 1996. In response to the amended complaint, a number of claims for contribution and indemnity were made. Initially, on May 2, 1996, GSECH filed a cross-claim against Dr. King. On May 3, 1996, Wener filed both a third-party complaint against the District as Dr. King's employer,[2] and, together with Dr. Chidel, a cross-claim against Dr. King. Both the District and Dr. King filed separate cross-claims against Dr. Chidel and Wener on August 27, 1996.

On the morning of trial, Ms. Hubbard settled her claims against Dr. King and the District for $500,000. In doing so, she agreed to indemnify the two parties from any and all claims by the remaining defendants Dr. Chidel, Wener, and GSECH. At the conclusion of the trial on November 5, 1997, the jury returned a verdict finding Dr. Chidel and Wener negligent, and that their negligence proximately caused Ms. Hubbard's injury. The jury also found GSECH independently negligent, but did not find its negligence to be a proximate cause of Ms. Hubbard's injury. The jury then awarded Ms. Hubbard $1,000,000 in damages.

Immediately thereafter, the trial court made a number of factual findings related to the cross-claims and the third-party claim for indemnification and contribution. The trial court determined that neither Dr. Chidel nor his employer Wener were liable for Ms. Hubbard's injuries. Instead, the trial court concluded that Dr. King had "made no effort whatever to retrieve the March 5, 1993 mammogram, and he had a duty to do that, and his failure to do it was a violation of the standard of care for a referring physician." The trial court further found that the Southwest Clinic's "sloppy record keeping" and failure to locate the missing mammogram results violated the standard of care for a health care facility, and that the District, as operator of the Southwest Clinic was responsible for this lapse. However, because the trial court could not pinpoint whether it was the Southwest Clinic or Dr. King who had failed to ensure that Ms. Hubbard's report ended up in her file, the court deemed both the District and Dr. King to be the proximate causes of the injury, "both separately and together."

After allowing the parties to submit memoranda concerning the cross-claims and third-party claim for indemnification and contribution, the trial court rendered

1. Ms. Hubbard's complaint charged GSECH, through its radiology department and employees, including Dr. Chidel, with failing to exercise reasonable care by "(a) failing to detect and report the presence of a suspicious finding of possible mass in [her] left breast ..., and; (b) failing to use reasonable care in communicating both orally and in writing the abnormal findings of the 1993 mammogram to defendant Dr. King." As to Dr. King, the complaint alleged that he "either failed to follow the radiologist's recommendations, and failed to otherwise initiate any further diagnostic steps when he received the mammogram report from defendant [GSECH] or, alternatively if he did not receive said report,

defendant Dr. King (and/or his medical or support staff employees in his office) failed to realize the fact that the report was missing/had not been received, and failed to communicate with defendant [GSECH] or otherwise take any steps to secure or locate the missing report."

2. Pursuant to D.C.Code § 12–309, Wener sent then-Mayor Marion Barry written notice of its intent to file a third-party claim against the District as the employer of Dr. King. Along with this letter, Wener included a copy of the amended complaint.

its final decision on February 2, 1998. The trial court concluded that Dr. Chidel, Wener, and GSECH were "entitled to full indemnity from settling defendant Dr. King" because "Dr. King's and the Southwest Neighborhood Center's negligence was far more egregious, primary, direct, causative, correctable, avoidable, aggravating, superceding, and repetitive extending over many months compared to any negligence of the trial defendants." The court concluded that Ms. Hubbard would receive nothing from defendants Chidel, Wener, and GSECH.

Ms. Hubbard then appealed the trial court's verdict. On January 31, 2002, this court reversed the trial court's ruling that Dr. Chidel, Wener, and GSECH were entitled to full indemnification. *Hubbard v. Chidel,* 790 A.2d 558, 573 (D.C.2002) ("*Hubbard I*"). Our rationale was twofold: (1) the trial court erred in making factual findings that were inconsistent with the jury's findings because the parties had not made an appropriate and timely post-trial motion to set aside the jury's verdict; and (2) it was improper for the trial court to require Dr. King and the District to indemnify Dr. Chidel, Wener, and GSECH because all parties were joint tortfeasors and guilty of active negligence that concurrently produced Ms. Hubbard's injuries. *Id.* Finding indemnification inappropriate, we remanded the matter to the trial court "to determine the number of joint tortfeasors subject to the contribution remedy,

and then decide the appropriate *pro rata* credit or percentage reduction of the jury award of $1 million against Dr. Chidel and [Wener]." *Id.* at 573. Although we concluded that Wener gave timely notice under D.C.Code § 12–309,[3] we left it to the trial court to determine whether Dr. Chidel was required to give the District separate notice of his claim for contribution. *Id.*

On remand, the trial court ordered the parties to brief the issues related to the contribution remedy. After considering the positions of the respective parties, the court issued a Memorandum Opinion on November 21, 2002. In it, the trial court found that "*factually* (though not necessarily for contribution purposes)" there were three separate tortfeasors: "(1) Defendants Chidel and Wener treated as one, (2) Dr. King, and (3) the District of Columbia as operator of the Southwest Clinic."[4] The trial court further found that "cross-claims for contribution [had] properly been made by *both* defendants Chidel and Wener against the District for *both* the conduct of Dr. King *and* the operation of the Southwest Clinic."[5] Next, the trial court found that Wener gave timely § 12–309 notice to the District of its intent to seek contribution for the negligent operation of the Southwest Clinic, while Dr. Chidel did not give proper notice.

When calculating Wener's *pro rata* offset, the court counted three joint tortfea-

---

3. *Hubbard I, supra,* 790 A.2d at 573 (holding that for the purposes of a third-party cross-claim against the District, "the 180–day period set forth in § 12–309 begins to run when a defendant/potential third party plaintiff has been sued, *i.e.,* served with the plaintiff's summons and complaint for damages").

4. The trial court treated defendants Dr. Chidel and Wener as one tortfeasor in accordance with our statement in *Hubbard I* that we found "no error in the trial court's deter-

mination that Dr. Chidel and Wener constitute one tortfeasor rather than two." *Hubbard I, supra,* 790 A.2d at 570 n. 11.

5. Although Wener's initial third-party complaint filed in 1996 alleged that the District was liable only as the employer of Dr. King, in 1998 the court granted Wener and Dr. Chidel's post-verdict motion for leave to amend the complaint to claim negligence of employees other than Dr. King.

sors[6] and deemed Wener responsible for one third of the $1 million verdict, or $333,333.33. For purposes of calculating Dr. Chidel's *pro rata* recovery, the court counted only two joint tortfeasors[7] and reduced his verdict by one half, to $500,000.00. Ultimately, the trial court entered a joint and several judgment against Wener and Chidel in the amount of $333,333.33 and a sole judgment against Chidel in the amount of $166,666.67, with interest at the rate provided by law from November 5, 1997, the date of the jury verdict. In entering judgment, the trial court explained that Ms. Hubbard "may not, of course, recover from either or both of them more than $500,000."

## II.

On appeal, Dr. Chidel and Wener advance three arguments: (1) the trial court erred in finding that Dr. Chidel was required to give separate notice to the District under § 12–309; (2) the trial court should not have entered different judgments against Dr. Chidel and Wener after they had been deemed "one tortfeasor" for contribution purposes; and (3) the trial court erred in requiring them to pay interest to Ms. Hubbard from the date of the jury verdict. In response to these arguments, Ms. Hubbard cross-appeals, contending that Dr. Chidel's failure to give timely § 12–309 notice precludes Wener from recovering from the District. Alternatively, she argues that the contents of Wener's notice to the District were defective because they did not inform the District of Wener's intent to sue for the negligent operation of the Southwest Clinic. She also challenges the court's resolution of the contribution issue. We consider each argument in turn.

### 1. Notice under § 12–309

This court reviews questions of compliance with D.C.Code § 12–309 *de novo. District of Columbia v. Arnold & Porter,* 756 A.2d 427, 436 (D.C.2000). D.C.Code § 12–309 (2001), provides:

> An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage. A report in writing by the Metropolitan Police Department, in regular course of duty, is sufficient notice under this section.

Congress intended § 12–309 to provide District officials with "reasonable notice of [an] accident so that the facts may be ascertained, and if possible, the claim adjusted ...." H.R. REP. No. 2010 at 2 (1933). Of particular concern to Congress was "protect[ing] the District of Columbia against unreasonable claims and ... assist[ing] it in the defense of the public interest where claims are made within the 3–year statute of limitations but so long after the event that it is impossible for the District of Columbia to obtain evidence for use in litigation which may result." *Id.* at 1.

Dr. Chidel and Wener argue that Dr. Chidel "substantially complied" with the notice requirements of § 12–309 for two reasons. First, they claim that the purpose of the notice statute was satisfied because the District had been involved in representing its employee, Dr. King, from the outset of the lawsuit. Because the

---

**6.** The three joint tortfeasors were: Wener/Dr. Chidel, Dr. King, and the District.

**7.** The two joint tortfeasors were: Wener/Dr. Chidel and Dr. King.

District knew all along about Ms. Hubbard's injury, they argue, there was no need for Dr. Chidel to give notice to the District. Second, they contend that Dr. Chidel should be able to rely on his employer Wener's timely notice because this court deemed both Chidel and Wener to be one tortfeasor in the context of contribution. *See Hubbard I, supra,* 790 A.2d at 570 n. 11. Because they "substantially complied" with the notice requirements of § 12–309, they claim that Dr. Chidel should be able to recover from the District.

■■■ This "substantial compliance" argument goes against established law in the District of Columbia. We have held that strict compliance with the terms of § 12–309 is "mandatory as a prerequisite to filing suit against the District." *District of Columbia v. Dunmore,* 662 A.2d 1356, 1359 (D.C.1995) (quoting *Hardy v. District of Columbia,* 616 A.2d 338, 340 (D.C.1992)) (internal quotation marks omitted). The notice statute is construed narrowly against claimants "[b]ecause it is in derogation of the common law principle of sovereign immunity . . . ." *Gross v. District of Columbia,* 734 A.2d 1077, 1081 (D.C.1999) (quoting *Doe ex rel. Fein v. District of Columbia,* 697 A.2d 23, 29 (D.C.1997)) (internal quotation marks omitted). Despite Dr. Chidel and Wener's suggestion to the contrary, "actual notice of [a] potential claim is not an appropriate consideration under section 12–309." *Doe, supra,* 697 A.2d at 29. Thus, knowledge that the District may have acquired about the case through its representation of Dr. King would not excuse Dr. Chidel from compliance with the formal notice requirement. *See id.; see also Campbell v. District of Columbia,* 568 A.2d 1076, 1078 (D.C.1990) (filing a lawsuit against the District during

the six-month notice period is insufficient notice under § 12–309 because the statute is designed to inform the District of potential litigation *prior* to a full-blown lawsuit).

Appellants Dr. Chidel and Wener point to *Shehyn v. District of Columbia,* 392 A.2d 1008 (D.C.1978) and *Romer v. District of Columbia,* 449 A.2d 1097 (D.C. 1982) as examples of cases where we did not require strict compliance with the statute. These two cases, however, are clearly distinguishable.

In *Shehyn,* the District was sued for breaching its contractual duty to restore a leased property to its original condition. *Id.* The *Shehyn* court held that because the District was aware both of the breach and of the resulting injury at the time it occurred, statutory notice was not required to bring suit against the District. *Shehyn, supra,* 392 A.2d at 1014; *District of Columbia v. Campbell,* 580 A.2d 1295, 1299 (D.C.1990). The court found that the District had notice both of the breach and of the injury because it "took possession of the premises in the condition to which they were to have been restored." *Id.* The *Shehyn* court distinguished claims arising from the negligence of District employees,[8] explaining that in such cases, the District, as a corporate entity, would not necessarily be on notice of the breach or of the resulting injury when it occurred. In the instant case, the District's liability is predicated on the negligent acts of Southwest Clinic employees whose "sloppy record keeping" contributed to the clinic's failure to locate Ms. Hubbard's mammogram report. Although the trial court found the District liable for the negligent operation of the Southwest Clinic, there is no indication that the District was aware, at the time of the breach, that any injury had

8. The court specifically mentioned claims arising from "medical negligence or malpractice" by District employees. *Id.* (referring to

*Hill v. District of Columbia,* 345 A.2d 867 (D.C.1975)).

occurred. Thus, under *Shehyn,* Dr. Chidel was required to give notice to the District.

In *Romer,* we held that where a husband gave timely statutory notice of his claim for personal injuries, his wife was not required to give separate notice of her collateral claim for loss of consortium. *Romer, supra,* 449 A.2d at 1102. Our conclusion rested in part on the notion that "[c]laims for loss of consortium are collateral to a spouse's claim for injuries; the two claims are tied together and the one (consortium) is dependant on the other (injuries)." *Id.* at 1101. As long as the injured spouse gave timely notice sufficient to allow the District "to investigate the accident, to try to settle claims, and to prevent future accidents," we said that formal notice of a related loss of consortium claim would not provide the District with information it did not already have. *Id.* We see no reason to extend *Romer* beyond the context of loss of consortium. *See Parker v. Grand Hyatt Hotel,* 124 F.Supp.2d 79, 90 (D.D.C.2000) ("Nothing in *Romer* indicates that its holding was intended to apply to claims other than claims for loss of consortium.").

■■■ Even assuming, *arguendo,* that *Romer* applied to the instant case, Wener's timely notice came too late to help Dr. Chidel. For more than a year after Ms. Hubbard brought her malpractice lawsuit, the District remained unaware that it could be made a party to the action. Ms. Hubbard, the primary claimant, failed to give timely notice to the District of her injury. As a result, she never sued the District. In the six months after they were named defendants in this action, neither Dr. Chidel nor GSECH notified the District of their intent to seek contribution. The only parties involved at this point were Ms. Hubbard, Dr. Chidel, Dr. King, and GSECH. Discovery had not yet revealed that Wener was Dr. Chidel's actu-

al employer. Thus, the District could not have known at that time that any claims would be brought against it. A year passed before Wener was named a party to this action. The fact that Wener gave timely notice of its intent to bring a cross-claim against the District cannot serve to retroactively notify the District of Dr. Chidel's intent to sue. Thus, we hold that when circumstances require compliance with D.C.Code § 12–309, a party seeking contribution from the District of Columbia who fails to notify the District of his claim may not rely upon his employer's subsequent timely § 12–309 notice to bring a claim against the District.

In her cross-appeal, Ms. Hubbard attempts to argue that because Dr. Chidel and Wener were deemed one party for purposes of contribution, Dr. Chidel's failure to timely notify the District of its claim under § 12–309 precludes Wener from bringing a claim against the District. We already resolved this issue in *Hubbard I,* however, when we held that "Wener's notice of its contribution claim against the District fell well within the time frame required by § 12–309." *Hubbard I, supra,* 790 A.2d at 573.

■■■ Ms. Hubbard argues in the alternative that because Wener's notice failed to inform the District of its intent to sue for the negligent operation of the Southwest Clinic, Wener should be barred from recovering on that theory of liability. On this point, we agree. Although the content requirements of a notice under § 12–309 are to be interpreted liberally, *see, e.g., Wharton v. District of Columbia,* 666 A.2d 1227, 1230 (D.C.1995), we require "specificity with respect to the cause and circumstances of the injury." *Doe, supra,* 697 A.2d at 27. To be sufficient, the notice must "describe[ ] the injuring event with sufficient detail to reveal, *in itself,* a basis for the District's potential liability." *Doe,*

*supra,* 697 A.2d at 27 (emphasis added) (quoting *Washington v. District of Columbia,* 429 A.2d 1362, 1366 (D.C.1981) (en banc)). In *Doe,* we said that police reports detailing how a child had been burned by scalding bath water at her godmother's home did not sufficiently set forth the "cause and circumstances" of the child's injuries so as to notify the District of its potential liability for those injuries. *Doe, supra,* 697 A.2d at 27–29. Although, in a general sense, the police reports in *Doe* described the "cause and circumstances" under which the child was injured (*e.g.,* that she was "burned by hot water in a bathtub"), the reports were insufficient because they failed to mention the *basis* for the District's liability—its alleged failure to intervene and take custody of the child before she was injured. *Id.*

█ Similarly, in the instant case, Wener's notice to the District made absolutely no mention of the District's negligent operation of the Southwest Clinic. Rather, Wener's notice was quite clear that "the liability, if any, in this case rests with Dr. King, and therefore, the District of Columbia as his employer." Given that the notice wholly failed to mention the negligence of the Southwest Clinic, the District could not have "reasonably anticipated" that it would be sued for the negligence of the Southwest Clinic.[9] For this reason, we hold that the contents of Wener's timely notice to the District were insufficient to permit a claim regarding the District's negligent operation of the Southwest Clinic.

## 2. Contribution

On appeal, both parties challenge the trial court's ruling regarding contribution, raising essentially the same issues as were raised in *Hubbard I.* In that case, we recounted the general legal principles governing the remedy of contribution as set forth in *District of Columbia v. Washington Hosp. Ctr.,* 722 A.2d 332, 336–37 (D.C. 1998) (en banc). *Hubbard I, supra,* 790 A.2d at 569–70. There, we explained:

> Contribution is one of several theories used to apportion damages among tortfeasors to an injured party. In this jurisdiction, the law pertaining to contribution among joint tortfeasors has been established by case precedent rather than by statute. Under these precedents it is now well‑settled that there is a right of equal contribution among joint tortfeasors .... Since we have not recognized degrees of negligence in this jurisdiction, contribution is apportioned equally among all tortfeasors. Thus, the fact that the negligence of one may be greater than that of another ... does not change the method of equally apportioning contribution .... An essential prerequisite for entitlement to contribution is that the parties be joint tortfeasors in the sense that their negligence concurred in causing harm to the injured party ....

*Id.* (quoting *Washington Hosp. Ctr., supra,* 722 A.2d at 336–37) (citations and internal quotation marks omitted).

█ Where, as in the instant case, the plaintiff settles with a party who is later

9. Although, in the past, we have "tolerated inaccuracies or lack of precision in the [contents of a] notice," we have done so because those inaccuracies "did not affect its basic adequacy to permit a prompt and focused investigation." *Gaskins v. District of Columbia,* 579 A.2d 719, 723 (D.C.1990) (notice sufficient where letter specified location of fall as somewhere on a 150–foot stretch of sidewalk). In the instant case, Wener's failure to mention the negligence of the Southwest Clinic prevented the District from investigating and defending against this claim. The statute cannot be read to tolerate this kind of "lack of precision."

found jointly liable for her injuries, "the court awards the non-settling tortfeasor a *pro rata* credit—*i.e.*, a percentage reduction based on the number of defendants—against the verdict." *Hubbard I, supra,* 790 A.2d at 570 (quoting *Bragg v. Owens-Corning Fiberglas Corp.,* 734 A.2d 643, 653 (D.C.1999)); *Berg v. Footer,* 673 A.2d 1244, 1248 (D.C.1996). Here, Chidel and Wener are the non-settling tortfeasor, seeking a *pro rata* credit against the million-dollar verdict against them. The parties dispute how that *pro rata* credit should be determined.

■ On appeal, we review questions of contribution *de novo. See Hubbard I, supra,* 790 A.2d at 570; *Paul v. Bier,* 758 A.2d 40, 42 (D.C.2000). Initially, we note that in *Hubbard I* we upheld the trial court's finding that Dr. Chidel and Wener constituted *one* tortfeasor rather than two. *Hubbard I,* at 570 n. 11. Ms. Hubbard argues that because the relationship between Dr. Chidel and his employer, Wener, parallels that of Dr. King and his employer, the District of Columbia, it is unfair to deem Dr. Chidel and Wener one tortfeasor without doing the same for Dr. King and the District. We do not find Ms. Hubbard's argument persuasive. The justification for treating Dr. Chidel and Wener as one tortfeasor is that Wener is only liable vicariously as Dr. Chidel's employer. *See Chilcote v. Von Der Ahe Van Lines,* 300 Md. 106, 476 A.2d 204, 212–13 (1984). Although the District is vicariously liable for Dr. King's negligence, the District was also deemed independently negligent for its operation of the Southwest Clinic. Thus, we affirm the trial

court's conclusion that Dr. King and the District remain two separate tortfeasors for contribution purposes.[10]

Appellants Chidel and Wener argue that the trial court erred in entering judgments against them in differing amounts. Specifically, they contend that because they are treated as one tortfeasor for purposes of contribution, and they are liable for one and the same tort, the judgments against them must be identical. To support their argument, appellants cite to a number of cases where we have held employers vicariously liable for the unintentional torts committed by employees in the scope of employment. *See, e.g., Brown v. Argenbright Sec., Inc.,* 782 A.2d 752, 757 (D.C. 2001); *Weinberg v. Johnson,* 518 A.2d 985, 988 (D.C.1986). In these cases, the liability of employer and employee is one and the same.

Appellants appear to have confused the concept of vicarious liability with the remedy of contribution. The jury, in fact, *did* find Dr. Chidel and his employer Wener jointly and severally liable for the same $1,000,000 verdict. The remedy of contribution, however, does not come into play until one makes a valid *claim* for contribution. *See e.g., Washington v. Washington Hosp. Ctr.,* 579 A.2d 177, 186 (D.C.1990). In essence, defendant becomes plaintiff when seeking contribution from other tortfeasors, and is only entitled to recover from those parties that are properly sued. *Id.*

■ In the instant case, the trial court correctly concluded that "factually" there were three joint tortfeasors: the two set-

10. Ms. Hubbard also asks that we include GSECH as a joint tortfeasor when calculating the *pro rata* shares. We decline to do so, because in *Hubbard I,* we concluded, "GSECH has no liability in this matter." *Hubbard I, supra,* 790 A.2d at 570. On remand, we asked the trial court to determine the respective status of three parties only: "Dr. King, the Southwest Clinic, and the District, specifically whether they constitute a single tortfeasor or more than one or two tortfeasors." *Id.* at 570–71. Thus, the question of GSECH's liability is not before us.

tling tortfeasors (Dr. King and the District), and one non-settling tortfeasor (Dr. Chidel & Wener). The trial court erred, however, when it concluded that there were three tortfeasors for purposes of determining Wener's *pro rata* share, but only two tortfeasors for the purposes of determining Dr. Chidel's share. The trial court's "factual[ ]" finding of three tortfeasors should have controlled its determination of the *pro rata* recoveries. This is because we determine each tortfeasor's *pro rata* share according to the number of settling versus non-settling tortfeasors. *See id.* at 185.

Because there are three tortfeasors and we have determined that Dr. Chidel and Wener are entitled to recover from only one of them (Dr. King), they are each entitled to a credit representing one third of the $1,000,000 verdict against them, or $333,333.33. Dr. Chidel and Wener are, thus, jointly and severally liable for a judgment of $666,666.66.[11] Accordingly, we vacate the trial court's award and remand for recalculation of credits and reentry of judgment in a manner consistent with this opinion.

### 3. Accrual of Interest

■ The trial court entered judgment on remand awarding Ms. Hubbard interest from the date of the jury's verdict on November 5, 1997. This award was consistent with the rule we announced in *Bell v. Westinghouse Elec. Corp.,* 507 A.2d 548 (D.C.1986) that, under D.C.Code § 15–109,[12] "interest shall run from the date of the verdict and original judgment." *Bell, supra,* 507 A.2d at 548. In *Bell,* we faced the issue of when interest would begin accruing in a case where the initial judgment and verdict were vacated by the trial court, then reinstated on appeal, which led to the entry of a second judgment. *Id.* We explained that unless the prevailing plaintiff receives interest from the date of the *original* verdict and judgment "she will be rendered less than whole by the award she eventually receives, with the result that the plaintiff loses, while the defendant gains from the trial court's error." *Id.* at 555.

Dr. Chidel and Wener contend that the U.S. Supreme Court tacitly overruled *Bell* in *Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990) when it held that, under 28 U.S.C. § 1961, "postjudgment interest properly runs from the date of entry of judgment." *Kaiser, supra,* 494 U.S. at 835, 110 S.Ct. 1570. Following *Kaiser,* they urge this court to calculate interest from November 21, 2002, the date the second judgment was entered. As we explained in *Bell,* however, "federal court constructions of 28 U.S.C. § 1961 . . . are

---

**11.** In entering judgment, the trial court indicated that Ms. Hubbard "may not, of course, recover from either or both of them more than $500,000." To the extent that this statement reflects the court's belief that Ms. Hubbard could receive no more than the million dollars she was awarded by the jury, the statement is incorrect. *See Berg, supra,* (holding that the *Martello v. Hawley,* 112 U.S.App. D.C. 129, 300 F.2d 721 (1962) rule applies even in situations where the nonsettling defendant's *pro rata* contribution, when added to amount recovered in settlement, will result in a recovery to the plaintiff that exceeds the jury verdict).

**12.** D.C.Code § 15–109 (2001) reads as follows: "In an action to recover damages for breach of contract the judgment shall allow interest on the amount for which it is rendered from the date of the judgment only. This section does not preclude the jury, or the court, if the trial be by the court, from including interest as an element in the damages awarded, if necessary to fully compensate the plaintiff. In an action to recover damages for a wrong the judgment for the plaintiff shall bear interest."

informative but not binding authority." *Bell, supra,* 507 A.2d at 554. The Supreme Court's ruling in *Kaiser* is limited to the federal post-judgment interest statute, 28 U.S.C. § 1961, and does not necessarily determine how this court should deal with interest under the District's local interest statute. As a result, this panel remains bound by the rule established in *Bell.* We affirm the trial court's award of interest from the date of the verdict, November 5, 1997.

*So ordered.*